## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANGELA PUCCINELLI        :
                          :
       *Plaintiff*,          :
                          :
v.                         :
                          :
SOUTHERN CONNECTICUT STATE  :         JUNE 2, 2021
UNIVERSITY, JOE BERTOLINO;    :
STEPHEN HEGEDUS; ROBERT      :
PREZANT AND KARA FARACLAS  :
                          :
       *Defendants*.       :

## <u>COMPLAINT</u>

## I.    <u>INTRODUCTION</u>

1.     This case involves discriminatory conduct by the Respondent Southern Connecticut State University ("Respondent" or "SCSU") that effectively has destroyed the career of the Complainant, Angela Puccinelli ("Complainant" or "Ms. Puccinelli").

2.     Ms. Puccinelli is a person with a disability and at all times mentioned herein was a student enrolled at Defendant SCSU. Plaintiff has overcome a history of trauma and being raised in the foster care system. While she suffers from Post-Traumatic Stress Disorder ("PTSD") and Anxiety, her life experience has given her compassion and understanding for students with disabilities and special education needs. Her adult life has been spent in school developing a career where she could work with special education students.

3.     While Plaintiff requires accommodations in her own educational settings, by the Fall of 2019, Plaintiff had earned nearly a 4.0 GPA in the Comprehensive Special Education Teaching Certification at SCSU.

4.     Student teaching was the final experience required for Plaintiff's graduation and initial certification in the Program. Plaintiff was placed in a student teaching position at **Moran**

Middle School ("Moran") in August 2019. She was scheduled to complete the Program at the end of 2019.

5. Shortly after beginning her student teaching experience, the Cooperating Teacher at Moran who supervised Plaintiff, observed that she had scars on her arms—indicative of her history of cutting. Thereafter, she instructed Plaintiff that she did not want her to work with Student A, a student with a history of trauma and cutting. The direction didn't just reflect bias and discrimination against Plaintiff, but it resulted in violations of Student A's Individual Education Program ("IEP") and rights under the Individuals with Disabilities in Education Act ("IDEA"). Plaintiff raised concerns about the decision to both SCSU and the Cooperating Teacher at Moran

6. SCSU thereafter discriminated and retaliated against Plaintiff and failed to provide her due process and equal protection she was entitled to under SCSU policies, resulting in Plaintiff's removal from the Student Teaching Placement, and ultimately the Program. This has effectively ended Plaintiff's teaching career, rendering her tuition payments, and the years she invested into her education, meaningless.

## I. **JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to the asserted claims occurred herein.

9. This Court has subject matter jurisdiction over Plaintiff's state law claim, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the claims under federal law.

## II.    PARTIES

1.      Plaintiff, Angela Puccinelli, resides in Meriden, Connecticut.

2.      Plaintiff is an individual with a disability, specifically anxiety and Post Traumatic Stress Disorder.

3.      Plaintiff demands a jury trial on all claims so triable.

4.      Defendant, Southern Connecticut State University ("SCSU") is a public university located in New Haven, Connecticut.

5.      SCSU's College of Education is an Educational Preparation Provider (EPP) approved by the Connecticut State Board of Education and accredited by the National Council for the Accreditation of Teacher Education (NCATE) and the Council for the Accreditation of Educator Preparation (CAEP).

6.      The Certification or Licensure programs offered by the Professional Education Unit are governed by and have been approved by the Connecticut State Board of Education.

7.      The Connecticut State Board of Education, CAEP and SCSU have established processes governing removal of Students from SCSU's programs in the College of Education.

8.      Defendant Joe Bertolino is and was the President of SCSU during all times relevant herein. He is being sued in his official capacity.

9.      Defendant Stephen Hegedus is and was the Dean of the College of Education employed by Defendant SCSU during all times relevant herein. He is being sued in his individual and official capacities.

10.      Defendant Kara Faraclas is and was the Chair of the Department of Special Education employed by Defendant SCSU during all times relevant herein. She is being sued in her individual and official capacities.

11.     Defendant Robert Prezant is and was the Provost and Vice President for Academic Affairs employed by Defendant SCSU during all times relevant herein.  He is being sued in his individual and official capacities.

12.     All individuals reside in the State of Connecticut.

13.     At all times relevant herein, Plaintiff was a student attending SCSU and/or a student teacher supervised at within the College of Education at SCSU.

14.     Defendant SCSU is an education program or activity that receives federal financial assistance.

## III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the federal Equal Employment Opportunity Commission ("EEOC"), alleging disability and pregnancy discrimination, retaliation for her previous opposition to discriminatory conduct and denial of equal services.

16.     The Complaint was timely filed insofar as it was filed within 300 days of Defendants' last discriminatory acts against the Plaintiff.

17.     Plaintiff received a release of Jurisdiction, dated March 4, 2020, for the CHRO and EEOC Complaints.  This Complaint is filed within 90 days of the Plaintiff's receipt of this notice.

18.     Separately, concurrently with the filing of this Complaint, Plaintiff filed a Complaint with the Connecticut Office of the Claims Commissioner alleging common law claims against the defendants.

19.     If Plaintiff receives permission to file such common law claims, she will move for leave to amend this Complaint to add claims for breach of contract and negligent infliction of emotional distress.

IV.     **STATEMENT OF FACTS**

20.     Plaintiff was admitted to SCSU on April 26, 2017.

21.     At the time of her admission, Plaintiff had already accrued substantial credits towards a bachelor's degree in General Education.

22.     Ms. Puccinelli enrolled in Comprehensive Special Education Teaching Certification ("Program") at SCSU for the specific purpose of receiving a bachelor's degree in Special Education K-12 as well as a Comprehensive Special Education Teaching Certification to enable her to teach in that specialized area of education.

23.     At all relevant times, SCSU had knowledge of Plaintiff's disabilities since she had requested accommodations pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act to address anxiety she experienced in certain academic settings.

24.     At all relevant times, Plaintiff achieved high honors as a student at SCSU.  By September 2019, Plaintiff had earned a 3.95 Cumulative Grade Point Average and a portfolio of recommendation letters from various educational professionals.

25.     Throughout her time as a student at SCSU, Plaintiff experienced a continuing course of discrimination and retaliation, was denied the protections of policies and procedures, and was held to a higher standard than her non-disabled peers.

26.     In January of 2019, Plaintiff experienced bullying by a professor, Greg McVerry, that was directly related to her disability. Plaintiff approached the professor to resolve confusion

related to a clerical error on the course website. She asked the professor if they could go through the concepts of the curriculum.

27.     During that meeting the professor yelled at the Plaintiff and used profanity. He showed other signs of aggression and made comments about her disability including that she was "not fit to be a teacher." He stated to Plaintiff that if she had a mental illness, she should "reconsider her degree."

28.     Plaintiff reported this incident to the Associate Dean of the School of Education, Dr. Marie Nabbout-Cheiban and the Chair of the Curriculum and Learning Department, Dr. Goldberg. SCSU failed to take meaningful action to address Plaintiff's report.

29.     On or about May 1, 2019, Plaintiff reported incidents of bullying by other students that was related to her disability. Plaintiff reported this several faculty members at SCSU. SCSU failed to take meaningful action to address Plaintiff's report.

30.     During the Spring and Summer semesters, Plaintiff experienced an increase in her anxiety symptoms related to various stressors in her life. She sought support from SCSU's Disability Resource Center and several SCSU faculty and staff seeking accommodations.

31.     On July 29, 2019, Defendant Hegedus sent a letter to Plaintiff in which he unilaterally determined that Plaintiff should not be permitted to complete her student teaching placement in the Fall of 2019. Defendant based this decision on Plaintiff's correspondence seeking accommodations and "recent incidents," which were not disclosed in the letter.

32.     This decision by Defendant Hegedus would have the impact of preventing Plaintiff from completing the final requirement necessary to complete the Program.

33.     Defendants failed to follow required policies and procedures for such discipline, depriving Plaintiff of her right to due process.

34.     Plaintiff attended a class with her advisor, Dr. Judith Terptra, on July 31, 2019 and reported her concern about Dr. Hegedus' decision that the Fall was "not a suitable time" for her to complete her student teaching placement.

35.     In a document entitled "Summary of Meeting with Angela Puccinelli" ("July 31, 2019 Summary") the exchange was described as follows:  Plaintiff was "very calm in the meeting and expressed her concerns and how she was dealing with her emotions. Angela has been observed teaching multiple times during [her practicum] and she is very good with the children and very appropriate with other adults from the school. After meeting with her and her collaborative partner earlier in the class, she has also repaired that relationship."

36.     Dr. Terpstra coordinated a meeting that same date with Dr. Hegedus to discuss the July 29, 2019 Letter.

37.     Dr. Hegedus and Dr. Terptra met with Plaintiff in Dr. Hegedus' office. The July 31, 2019 Summary indicated that Plaintiff "was able to clearly articulate her concerns and issues."

38.     At the conclusion of the meeting, Defendants allowed Plaintiff to proceed with student teaching in the Fall, but they changed the standard by which Plaintiff would be evaluated in her placement.

39.     Specifically, the Summary states as follows: "We discussed that student teaching is a stressful semester with observation. Increased responsibility, and edTPA. It can cause anxiety for any students and *Angela gave us examples of how she can manage herself and her work*. The Dean also explained that if there is a negative situation that does occur during student teaching then the district can and will ask for the student to be removed from the placement and it is unlikely that a new placement will be secured by SCSU." (emphasis in original).

40.     The Summary further provided that Defendants would increase supervision of Plaintiff in her student teaching placement.

41.     The primary issue noted as the basis for both the July 29, 2019 Letter and the decisions in the July 31, 2019 Summary was Plaintiff's difficulty in email communication. Defendants agreed to provide in-person communication during her student-teaching placement.

42.     Other reasons cited for Defendants' decisions were discriminatory or retaliatory in nature, and/or held Plaintiff to a higher standard than her non-disabled peers.

43.     SCSU failed to provide due process to Plaintiff before changing the requirement for completion of the student teaching experience in that SCSU, among other violations:

    a.    failed to provide Notice to Plaintiff of issues that may give rise to discipline;

    b.    failed to properly convene a Program Review;

    c.    failed to provide a written Scaffolding for Success Action Plan ("SSAP").

44.     Notwithstanding Plaintiff's need for accommodations at SCSU, she was successful in her practicum at Mead in the semester just prior to her student teaching placement.

45.     Julia Rodriguez, the kindergarten teacher supervising Plaintiff at Mead, spoke highly of Ms. Puccinelli's skills, attitude, approach and demeanor. Ms. Rodriguez provided positive feedback to both Ms. Puccinelli and Dr. Terpstra.

46.     Objective data, including Plaintiff's grades and scores related to an observation of individualized instruction at Mead, showed that Plaintiff was highly successful and professional in the classroom.

47.     Despite the minor nature of the issues, Defendant Hegedus raised the standard for successful completion of Plaintiff's student teaching experience, without providing any notice or due process.

48.     Despite the success of Plaintiff's practicum and her professionalism in the meeting, Defendant Hegedus raised concerns that Plaintiff could not be successful specifically because of symptoms of her anxiety.

49.     Other non-disabled students were not held to a standard that required dismissal from the Program in the event of any "negative situation" in their student teaching placement.

50.     Plaintiff began her student teaching placement at Moran Middle School on Monday August 25, 2019.

51.     Plaintiff was placed with Kristen Rosenberry ("Rosenberry" or "Cooperating Teacher") in her special education classroom at Moran. All students in this classroom qualified and received an Individualized Education Plan ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA").

52.     Plaintiff carried out her student-teaching duties and responsibilities at Moran competently and was able to perform the responsibilities of her placement.

53.     After the first week in her placement, Rosenberry provided positive feedback to Plaintiff, including that she was impressed with her ability to engage and connect with the students, as well as her ability to simplify and explain complex ideas to students at all levels. The Cooperating teacher further stated to Plaintiff that she would likely find a job quickly due to her ability to articulate herself well.

54.     On August 30, 2019, Plaintiff shared in an email a summary of the feedback she had received from her Cooperating Teacher with the supervisor of her student teaching placement at SCSU, Judith Terpstra.

55.     The only issue between August 30, 2019 and September 12, 2019 was that Plaintiff had not been informed of the time Moran wanted her to report to the school, and Plaintiff did not have an electronic badge that allowed her entry.  School started at 8:00 a.m. and

Plaintiff typically arrived 10-15 minutes early but was often unable to gain access to the building. Moran asked that she arrive by 7:40 a.m., and Plaintiff complied.

56.     In the course of getting to know her Cooperating Teacher, Plaintiff informed Rosenberry in a professional and general way about her disabilities and history of trauma. Plaintiff informed her that she had pursued a teaching certificate in special education in large part because of her own history as a student with disabilities. Plaintiff shared that her own experienced provided her with a significant understanding of issues facing students with disabilities, as well as compassion for and commitment to such students.

57.     Rosenberry commented on the fact that Plaintiff had scars on her arms, indicating she understood that Plaintiff had a history of cutting.

58.     On or about September 12, 2019, following Plaintiff's disclosures and Rosenberry's observation of Plaintiff's scars, Rosenberry instructed Plaintiff not to work with a specific special education student, Student A, a student with a significant history of trauma.

59.     Plaintiff had successfully been providing support to Student A as required by Student A's IEP.

60.     Upon information and belief, Rosenberry asked Plaintiff not to work with Student A because of a false and discriminatory belief that Plaintiff was unqualified and/or unable to work with this student because of her history of trauma and disabilities.

61.     Plaintiff was confused by the instruction not to provide support to Student A. Plaintiff attempted to seek clarification from Rosenberry, as her understanding was that she was required to provide classroom support to students as required by their IEPS.

62.     Plaintiff was unsure of whether she was permitted to interact with Student A in any way. Absent Plaintiff's support, when Student A would raise her hand, no one would attend

to her. Plaintiff observed that this often triggered an escalation of behaviors by Student A, and/or that she would just disengage with her learning.

63.     Plaintiff raised a concern that Student A was not receiving required support with Rosenberry. She believed that understanding Rosenberry's rationale for this direction, and how to ensure compliance with the IDEA related to this student, was her obligation as a student teacher in this special education classroom.

64.     Plaintiff's request for guidance was met with frustration and combativeness from Rosenberry. She refused to provide Plaintiff any further explanation. Plaintiff and Rosenberry did not speak any further about the issue.

65.     Later that day, Plaintiff emailed Dr. Terpstra, the supervisor of her student teaching placement, seeking guidance because she was uncomfortable with what had happened. Plaintiff was unable to reach her.

66.     On September 13, 2019, Plaintiff was informed Dr. Terpstra that there had been a change to her student teaching schedule based on a conversation that SCSU had with Plaintiff's Cooperating Teacher. Plaintiff was then told that she would be scheduled to meet with the team at SCSU the following week.

67.     Plaintiff emailed Rosenberry advising her of the same and letting her know she would not be at the placement pending further notice.

68.     On that same date, Plaintiff sent an email to Kara Faraclas, Special Education Department Chair at SCSU, expressing concerns about issues in the placement and seeking guidance and information about next steps. Faraclas did not immediately respond.

69.     Over the next weeks, Plaintiff was prevented by SCSU from taking any action to complete the requirements of the Program.

70.     Plaintiff made multiple attempts to contact faculty at SCSU seeking guidance about how to handle the situation and information about how to ensure she satisfied the criteria to complete the student teaching requirement in the Program.  She grew increasingly frustrated and anxious at the lack of information or meaningful response.

71.     Defendants violated their own agreement in the July 31, 2019 Summary to provide an opportunity for in-person communication.  They had actual notice that the failure to provide a fair opportunity for communication, and the failure to comply with established policies and procedures, would increase Plaintiff's anxiety.

72.     Plaintiff sought an in-person meeting with Faraclas, which was scheduled by Dr. Faraclas for the morning of September 16, 2019.

73.     Plaintiff received a phone call and email from Faraclas that morning cancelling the meeting.  Faraclas stated that SCSU had received an "update" from Moran that morning, which necessitated a higher level of review within the school of education.

74.     Faraclas failed and refused to provide any information about the issues raised by Moran, the nature of the meeting Plaintiff was now required to attend, or the potential consequence that Plaintiff could be expelled from the Program.  Faraclas only referred Plaintiff generally to the Scaffolding for Success policy in the Student Teaching handbook.

75.     At that time, Plaintiff believed the meeting was scheduled to address her concerns about the above noted compliance issues in this special education classroom, and how best to address those issues as a Student Teacher.

76.     SCSU's obligations related to discipline and/or removal of a student in the School of Education is set forth "Academic Standards; Teacher Certification Program," which provides as follows:

Candidates must maintain good standing in the program in order to qualify for student teaching and a recommendation from Southern Connecticut State University for State of Connecticut teacher certification. They also must demonstrate the following:

- Personal attitudes and attributes that affect their performance as teachers
- Professional behavior appropriate to the context that shows realization that actions reflect directly upon the status and substance of the profession;
- Confidentiality of all information concerning colleagues and students obtained in the educational process; and
- Integrity and honesty in written and verbal communication, documentations, and coursework related
- An undergraduate academic performance of at least a 2.7 GPA. After acceptance into a teacher education program, any candidate who completes 9 or more credits with a cumulative GPA of less than 2.7 will be placed on College of Education academic probation. The student will have one semester to raise the GPA to 2.7 or higher. Failure to do so will result in dismissal from the teacher education program and the College of Education.

Whenever any of the following occurs, a Scaffolding Success Action Plan (SSAP) needs to be provided: candidate GPA is below the program requirements, an assessment performance is at the "unacceptable level", or a behavior on or off campus that does not meet the Professional Attitudes and Dispositions of Educators occur.

77.     SCSU's obligations related to the procedures for the SSAP are further set forth a document entitled "Policy: Procedure to Establish Scaffolding Success Action Plan for Education Students" ("SSAP Procedures").  The SSAP Procedures state as follows:

- Whenever any of the following occurs, a Scaffolding Success Action Plan (SSAP) needs to be provided:
- Key indicator(s) is/are at the "Unacceptable" level on performance rubrics (e.g. Pre-CPAST, CUA, CPAST, etc.)
- Key course Grades, Semester Grades or Cumulative GPA are below the program requirements,
- A behavior on or off campus that does not meet the Professional Attitudes and Dispositions of Educators.

78.     Plaintiff was entitled to due process set forth in the SSAP Procedures.

79.     The first step in formal intervention by SCSU involves a "Level One Scaffolding Meeting," which is defined as follows:

**Level 1:** In case of recurrence of concerns with the same and/or with different faculty, and depending on the level of severity, the instructor /advisor /student teaching supervisor/ program coordinator or department chair will refer the candidate to a program review and to develop an SSAP.

- The student is notified by the Department Chair via email about their referral to the Program Review Committee, with the list of concerns that were identified and to schedule the meeting.
- The student is also notified that they can bring a support person to the meeting.
- The program review committee will consist of: The faculty referring the candidate to the program review (the instructor /advisor /supervisor), the program coordinator and the department chair, and is chaired by the department chair.
  - In case the program coordinator or the chair is the referring faculty, an additional faculty member who knows the candidate or had taught them would need to be part of the meeting.
- In case candidates chose to have a support person with them at this meeting, the support person cannot be part of the discussion.
- The chair will share with the candidate the concerns that are raised and give the candidate the time to respond to the concerns and share their viewpoint.
- The committee will then convene without the student and the support person (if any) and the referring faculty to determine if an SSAP is required and if so to devise the plan.
- The Chair will write the summary of the meeting and the SSAP that the committee devised (if any). A copy of this document is sent to the student, the referring faculty and the School of Education Dean's office.

80.     After cancelling the meeting between Plaintiff and Dr. Faraclas on September 16, 2019, convened a meeting with Plaintiff on September 20, 2019, which was purportedly a Level One "Scaffolding for Success" Meeting.  The meeting was attended by Dr. Kara Faraclas, Chair of the Department of Special Education and Dr. Kim Bean, Department of Special Education.

81.     Plaintiff learned for the first time at this meeting about purported issues in her student teaching placement, and that her placement at Moran was discontinued. The reason provided by SCSU was that Plaintiff did not follow the Cooperating Teacher's direction not to work with Student A, and that she "did not take redirection well."

82. The discontinuation of Plaintiff's placement at Moran, and SCSU's failure to provide a subsequent placement, was disproportionate to the issue.

83. The discontinuation of Plaintiff's placement had the effect of preventing Plaintiff from completing the Program without formally expelling her from the Program. Plaintiff was denied due process because Defendants circumvented SSAP Procedures.

84. SCSU failed to comply with the requirements of the SSAP Procedures, including but not limited to failing to provide Claimant proper notice about the meeting and failing to provide information about the claims against her. SCSU continued to violate their obligations to follow SSAP Procedures and refused to provide a Plan to enable Claimant to complete the last requirement to complete the Program.

85. On September 20, 2019 following the meeting, Plaintiff sent an email to Dr. Terpstra seeking information, and informing her that she is "devastated and trying to repair what [she] can."

86. Dr. Terpstra responded as follows: "I honestly don't have any information more than what I told you when we spoke on the phone. I was told there was going to be a meeting and then it was delayed. I'm sorry I can't tell you more. Dr. Faraclas should be the most up to date person. I can't even image how stressed you are. I reminded her again on Wednesday about your disability and how this isn't good for you. I'm sorry."

87. After the Level One Scaffolding Meeting, SCSU had an ongoing obligation to comply with SSAP Procedures, which provide for a Level Two meeting, as follows:

**Level 2: School of Education Review Committee (SoERC).**

For the cases where the severity of the concerns and/or the recurrence of the concerns require broader support or possible dismissal from the program, the matter is referred to the School of Education Review Committee (SoERC).

- The student will be notified by the Associate Dean of the School of Education about their referral to the School of Education Review Committee, with the list of concerns that were identified and to schedule the meeting. The student will also be notified that they can bring a support person to the meeting.
- The SoECRC is chaired by the Associate Dean of the School of Education and includes the Program Coordinator or faculty, the Department Chair, and:
    a. the Director of the Office of Educational Service - for cases related to Field placement and Clinical placement
    b. the Associate Dean of the Graduate school - when the candidate is enrolled in a Graduate program
- When the program coordinator or the chair is the referring faculty, an additional faculty member who knows the candidate or had taught them would need to be part of the meeting.
- When the candidate choses to have a support person with them at this meeting, the support person cannot be part of the discussion.
- The Associate Dean will share with the candidate the concerns that are raised. The candidate will use this meeting time to respond to the concerns and share their viewpoint.
- The committee will then convene without the student and the support person (if any) and the referring faculty to determine if an SSAP is required and if so to devise the plan, or if dismissal from the program is appropriate.
- The Associate Dean will write the summary of the meeting and the SSAP that the committee devised (if an SSAP is needed). A copy of this document is sent to the student, the referring faculty and the School of Education Dean's office.
- If it is determined that dismissal from the program is necessary, the Associate Dean will send a letter to the candidate outlining the dismissal and possible option for the candidate to consider. A copy of this letter is sent to the student, the referring faculty, the department chair and the School of Education Dean's office.

88.     SCSU convened what purported to be a Level Two Scaffolding meeting on November 22, 2019.  Plaintiff attended the meeting by phone with Dr. Terpstra and Dr. Hegedus. Plaintiff continued her efforts to advocate for her rights as a person with a disability and a student of SCSU so that she could graduate from the Program.

89.     The parties discussed the possibility of allowing Plaintiff to participate in the student teaching placement in the spring. Plaintiff had also disclosed that she was pregnant with a due date in July 2020. Defendants stated that Plaintiff's mental health status coupled with her

status as a pregnant woman could be "detrimental." They suggested instead that Plaintiff "take a few years off" before completing her degree.

90.     SCSU prepared a Decision Letter following the Meeting, dated December 5, 2019, stating that Claimant was dismissed from the Program. **SSCU failed, however, to send the Decision Letter to the Claimant**.  In the Letter, obtained later by Plaintiff, SCSU mischaracterized previous proceedings in issuing their decision.

91.     Not having received formal notice of the Decision, Plaintiff was unaware of next steps in the university processes related to her dismissal from the Program.  She learned about her right to submit an appeal to the Provost after the deadline had passed.

92.     Plaintiff asked for an extension to file an appeal, which was granted by the Provost, Dr. Robert Prezant, on December 13, 2010.  On December 17, 2019, Claimant submitted her appeal.

93.     Defendant Prezant rendered SCSU's final decision on Claimant's appeal on January 2, 2020, dismissing Claimant from the Program.

94.     Following her formal dismissal from the Program, Defendants suggested that Plaintiff remain enrolled at SCSU to complete a bachelor's in general studies with a concentration in Social and Community Service.  Defendants' proposal would render useless Claimant's completion the three years of education to specifically obtain certification to teach special education students.

95.     From January 2, 2020 through May 2020, SCSU refused to provide a degree that was commensurate with Claimant's successful completion of the coursework necessary to obtain a bachelor's degree in special education, in violation of her rights to due process and equal protection.

96.     Despite numerous requests, SCSU faculty and staff refused to speak with Plaintiff on the phone—they would only communicate with Plaintiff via email. Defendants did this despite their knowledge that email communication and the lack of response to Plaintiff increased her anxiety.

97.     Between January and May 2020, Plaintiff increasingly experienced significant financial hardships as the result of SCSU's discrimination and retaliation, and violations of Plaintiff's right to due process.

98.     In April 2020, the Veterans Administration, from whom she had received financial aid, requested reimbursement of her scholarship because SCSU expelled Plaintiff from the Program.

99.     Defendants provided preferential treatment to Plaintiff's non-disabled peers, in multiple ways, including but not limited to the following:

a. Allowing a student enrolled in the Program to complete the Program and graduate without consequence, despite egregious violations of policies on a school sponsored trip, including excessive drinking and inappropriate behavior in a room shared by other students of the Program;

b.  Allowing multiple students enrolled in the Program to complete the Program and graduate without consequence, despite repeated acts of bullying of other students;

c. Allowing a student who was removed from his student teaching placement following a disagreement with his Cooperating Teacher to Complete the Program and graduate without consequence.

d. Allowing all students in the Program, except Plaintiff, to complete student teaching in the Spring of 2020 during the Covid Pandemic by submitting a Portfolio in lieu of in-class teaching.

## V.     **LEGAL CLAIMS**

### VIOLATION OF PLAINTIFF'S RIGHT TO SUBSTANTIVE
### DUE PROCESS UNDER THE FOURTEENTH AMENDMENT
### TO THE U.S. CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983
### AGAINST DEFENDANTS

100.    Plaintiff incorporates by reference all preceding allegations in this Complaint.

101.    SCSU's College of Education, as an EPP, was approved by the Connecticut State Board of Education and accredited by the NCATE and CAEP.

102.    The Certification or Licensure programs offered by the Professional Education Unit have been approved by the Connecticut State Board of Education.

103.    Due to the requirements set forth by the Connecticut State Board of Education, CAEP, undergraduate teacher preparation programs are subject to specific academic standards set forth in a document entitled "Academic Standards: Teacher Certification Program."

104.    Consistent with the requirements set forth by the Connecticut State Board of Education, SCSU has established processes governing discipline and/or removal of Students from SCSU's programs in the School of Education.

105.    SCSU's policies, rules and regulations, including but not limited to those set forth in the SCSU's policy entitled "Policy: Procedure to Establish Scaffolding Success Action Plan for Education Students," create an implied contract between SCSU and its students under Connecticut law.

106.    SCSU's policies as set forth above further place substantive limits on Defendants' discretion to dismiss Plaintiff from the Program.

107. Accordingly, students such as Plaintiff, are entitled to a Degree and Certification as set forth in curriculum requirements unless SCSU follows the due process as set forth in their Policies.

108. Under SCSU's Policies, Regulations, Rules and Procedures as set forth above, Plaintiff had a property interest in her education and clear entitlement to the bachelor's degree in Special Education K-12 as well as the Comprehensive Special Education Teaching Certification in that there was a certainty and/or a very strong likelihood that she would have received the same absent Defendants' denial of due process.

109. Defendants failed to exercise professional judgment acted in a manner that was arbitrary and irrational when they removed Plaintiff from the Program and failed and refused to grant her degree and/or facilitate the granting of her degree.

110. Defendants' acts were intentional and inspired by actual malice and/or deliberate indifference to Plaintiff's constitutional rights.

111. Defendants intentionally and maliciously refused to provide accommodations in the process leading to Plaintiff's removal from the program in a manner that was specifically intended to exacerbate her symptoms of anxiety, including but not limited to Defendants' acts, including but not limited to the following:

  a. Intentionally depriving plaintiff of fair processes in a manner designed to create increased symptoms of anxiety;

  b. Intentionally withholding critical information regarding Plaintiff's status in the Program, the claims against her by Moran; the claims against her by SCSU, the nature of meetings she was asked to attend, the possibility of removal from the Program, and other information that Plaintiff required in order to understand and advocate for her rights;

  c. Intentionally failing to provide written notices and decisions as required by SCSU policies; and

d. Intentionally refusing to meet with Plaintiff in person, leaving email communication as the only means to advocate for her rights, despite that Defendants knew that email communication caused a significant increase in Plaintiff's anxiety.

112. By the actions and inactions noted above, Defendants knowingly increased the symptoms of Plaintiff's anxiety, and required her to advocate for herself *in writing* in manner that they knew rendered her unable to effectively advocate for herself. Defendants then used the exacerbation of Plaintiff's symptoms against her in further proceedings.

113. Defendants' actions were malicious and can be reasonably characterized as so egregious and outrageous as to shock the contemporary conscience.

114. As a result of Defendants' conduct, Plaintiff suffered damages.

**COUNT TWO:**
**VIOLATION OF PLAINTIFF'S RIGHT TO PROCEDURAL DUE**
**PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE**
**U.S. CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983**
**AGAINST DEFENDANTS**

115. Plaintiff incorporates by references all preceding allegations in this Complaint.

116. Defendants deprived Plaintiff of procedural due process including but not limited to their actions and inactions in that they:

a. Failed to comply with the processes set forth in Policy: Procedure to Establish Scaffolding Success Action Plan for Education Students; Academic Standards; Teacher Certification Program; and other Policies and Procedures;

b. Unilaterally changed the requirements of the Program as they applied to Plaintiff in a manner that circumvented Plaintiff's right to procedural due process;

c. Attempted to informally remove Plaintiff from the Program by refusing to allow her to complete the Student Teaching requirement of the Program, in a manner that circumvented Plaintiff's right to procedural due process;

d. Convened meetings that were designated as Level One and Level Two meetings *after* they occurred, depriving Plaintiff of notice and a meaningful opportunity to be heard;

e. Failed to provide Plaintiff notice and an opportunity to be heard, despite their obligation to do so under Policies and Procedures to which they were bound;

f. Failed to provide agreed to accommodations throughout discipline proceedings, despite Plaintiff's right to the same so that she could meaningfully participate in said proceedings;

g. Deprived plaintiff of fair processes in a manner designed to create increased symptoms of anxiety;

h. Withheld critical information regarding Plaintiff's status in the Program, the claims against her by Moran; the claims against her by SCSU, the nature of meetings she was asked to attend, the possibility of removal from the Program, and other information that Plaintiff required in order to understand and advocate for her rights;

i. Failed to provide written notices and decisions as required by SCSU policies; and

j. Refused to meet with Plaintiff in person, leaving email communication as the only means to advocate for her rights, despite that Defendants knew that email communication caused a significant increase in Plaintiff's anxiety.

117. As a result of Defendants' conduct, Plaintiff suffered damages.


## COUNT THREE:
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983
## AGAINST DEFENDANTS

118. Plaintiff incorporates by reference all preceding allegations in this Complaint.

119. The Equal Protection Clause of the Fourteenth Amendment commands that no government, "deprive to any person within its jurisdiction the equal protection of the laws" and requires that the government treat all similarly situated people alike.

120. Defendants, by their conduct violated the Equal Protection rights guaranteed to Plaintiff by the Fourteenth Amendment to the United States Constitution.

121. Plaintiff was part of a "protected class", a student with a disability, which SCSU categorically treated differently.

122. Plaintiff was subjected to selective enforcement of discipline in that he was (1) treated differently from other similarly situated individuals, as set forth above, and (2) that such differential treatment was based on impermissible consideration of her disability and intended to inhibit her exercise of her rights and inflicted with malice, bad faith and intent to injure.

123. Defendants engaged in a policy of unilaterally changing the requirements for Plaintiff's completion of the Program, while allowing non-disabled students the protections set forth in SCSU's Policies and Procedures

124. Defendants, by their conduct, violated the plaintiff's Equal Protection rights guaranteed to the plaintiff by the Fourteenth Amendment to the United States Constitution.

125. Defendants orchestrated a joint effort to force Plaintiff out of her Student Teaching Placement, and ultimately the Program and to prevent her from receiving the equal protection of the laws.

126. As a result of Defendants' conduct, Plaintiff suffered damages.


**COUNT FOUR:**
**DISABILITY DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, AS AMENDED, 29 U.S.C. §794, AGAINST SOUTHERN CONNECTICUT STATE UNIVERSITY**

127. Plaintiff incorporates by reference all preceding allegations in this Complaint.

128. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, prohibits discrimination on the basis of disability in programs or activities receiving federal financial assistance from the United States of America, including the United States Department of Education

129.    SCSU a program or activity that, at the times relevant hereto, was in receipt of federal financial assistance, including, but not limited to, federal financial assistance from the United States Department of Education

130.    At the times hereto, Plaintiff was a qualified student, with a disability as defined under the Rehabilitation Act of 1973 and the Americans With Disability Act,

131.    Defendants, in their actions and practices above, have discriminated against Plaintiff, and excluded her from participation in and denied her the benefits of Defendant's Program, services and activities because of discriminatory animus related to Plaintiff's disability.

132.    Defendants were required to make accommodations to their Policies and academic requirements as were necessary to ensure that they did not discriminate on the basis of disability against Plaintiff.

133.    Defendants have failed to provide and/or implement reasonable accommodations under Section 504 of the Rehabilitation Act that would enable Plaintiff meaningful access to SCSU's Program, services or activities.

134.    Defendant's dismissal of Plaintiff from the Program and failure to reverse their decision through the appeal process set forth in SCSU's Policies violates Plaintiff's rights under Section 504 of the Rehabilitation Act.

135.    As a result of Defendants' conduct, Plaintiff suffered damages.

### COUNT FIVE:
### DISABILITY DISCRIMINATION AND WRONGFUL DISCHARGE IN VIOLATION OF THE AMERICANS WITH DISABILITES ACT, 42 § U.S.C. 12182 AGAINST SOUTHERN CONNECTICUT STATE UNIVERSITY

136.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

137.    Defendant's actions and practices, described above, constitute discrimination under 42 U.S.C. § 12182 (a) and (b), in that Defendants have discriminated against Plaintiff on

the basis of Plaintiff's disability, with regard to the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and/or accommodations.

138.    Defendant has excluded Plaintiff from participation in and denied her opportunity to participate in or benefit from their programs, services and activities based upon fear, speculation and stereotype about her disability.

139.    Defendant have treated Plaintiff unequally compared to her non-disabled peers.

140.    Defendants have failed to provide and/or implement reasonable accommodations under Section 504 of the Rehabilitation Act that would enable Plaintiff meaningful access to SCSU's Program, services or activities.

141.    Defendant's dismissal of Plaintiff from the Program and failure to reverse their decision through the appeal process set forth in SCSU's Policies violates Plaintiff's rights under Section 504 of the Rehabilitation Act.

142.    As a result of Defendants' conduct, Plaintiff suffered damages.

## COUNT SIX:
### DISABILITY DISCRIMINATION IN VIOLATION OF THE CFEPA, CONN. GEN. STAT. § 46a-75, AS DEFINED UNDER § 46a-60(b)(1), AGAINST SOUTHERN CONNECTICUT STATE UNIVERSITY

143.    Plaintiff incorporates by reference all preceding allegations in this Complaint.

144.    Plaintiff suffers from a disability as defined under the Connecticut Fair Employment Practices Act in that she suffers from anxiety and PTSD.

145.    Plaintiff's disability was a factor that made a difference in Defendant's decision to dismiss Plaintiff from the Program and deny Plaintiff's appeal of her dismissal that she filed pursuant to Policies set forth by SCSU, all in violation of Conn. Gen. Stat. § 46a-75.

146.    As a result of Defendant's conduct, Plaintiff has suffered both economic and emotional harm.

147.     Defendant's actions in discriminating against Plaintiff on the basis of her disability was willful or with reckless indifference to Plaintiff's rights under Conn. Gen. Stat. § 46a-75.

## COUNT SIX:
## PREGNANCY DISCRIMINATION IN VIOLATION OF THE CFEPA, CONN. GEN. STAT. § 46a-75, AS DEFINED UNDER § 46a-60(b)(7) AGAINST SOUTHERN CONNECTICUT STATE UNIVERSITY

148.     Plaintiff incorporates by reference all preceding allegations in this Complaint.

149.     At all times relevant to the Complaint, Plaintiff was pregnant.

150.     Plaintiff's pregnancy was a factor that made a difference in Defendant's decision dismiss Plaintiff from the Program and deny Plaintiff's appeal of her dismissal that she filed pursuant to Policies set forth by SCSU, all in violation of Conn. Gen. Stat. § 46a-75.

151.     As a result of Defendant's conduct, Plaintiff has suffered both economic and emotional harm.

152.     Defendant's actions in discriminating against Plaintiff on the basis of her pregnancy was willful or with reckless indifference to Plaintiff's rights under Conn. Gen. Stat. § 46a-75.

## COUNT SEVEN:
## RETALIATION IN VIOLATION OF THE CFEPA, CONN. GEN. STAT. § 46a-75, AS DEFINED UNDER § 46a-60(b)(4) AGAINST SOUTHERN CONNECTICUT STATE UNIVERSITY

153.     Plaintiff incorporates by reference all preceding allegations in this Complaint.

154.     Plaintiff opposed an unlawful practice under the CFEPA, specifically discrimination on the basis of Plaintiff's disability and pregnancy.

155.     The plaintiff's opposition to discrimination was a factor in SCSU's decision to subject and/or continue to the subject the plaintiff to discrimination and/or dismiss Plaintiff from the

Program and deny Plaintiff's appeal of her dismissal that she filed pursuant to Policies set forth by SCSU, all in violation of Conn. Gen. Stat. § 46a-75.

156.     As a result of SCSU's conduct, the plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages, jointly and severally, from each Defendant:

a.  Economic damages;

b.  Compensatory damages;

c.  Declaration that Defendants' practices violated the violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution as guaranteed pursuant to 42 U.S.C § 1983;

d.  Injunctive relief, including that Defendants be enjoined and permanently restrained from continuing to engage in unlawful practices, that Defendants be directed to take affirmative action as is necessary to ensure the unlawful practices are eliminated; and an Order that SCSU take affirmative action to reinstate Plaintiff in the Program with a proper SSAP;

e.  Punitive damages for Defendants' willful and/or recklessly indifferent conduct;

f.  Attorneys' fees and costs; and

g.  Any other remedy that may appear to be just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury as to all claims to which she is entitled under law.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF,**



By_____
Elizabeth Knight Adams (CT 26259)
The Adams Law Firm, P.C.
41B New London Turnpike, Suite 7C
Glastonbury, CT 06033
Phone: (860)724-1300
Fax: (860)724-1302
Email: eadams@ekadamslaw.com

**HER COUNSEL**