## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PUCCINELLI, | : | No. 3:21-cv-00763-RNC |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN CONNECTICUT STATE | : | |
| UNIVERSITY, et al., | : | |
| *Defendants* | : | NOVEMBER 11, 2021 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants Southern Connecticut State University, ("SCSU"), Joe Bertolino, in his official capacity, Stephen Hegedus, in his official and individual capacities, Robert Prezant, in his official and individual capacities, and Kara Faraclas, in her official and individual capacities, (the Defendants), respectfully move this court to dismiss the plaintiff's amended complaint, (Dkt. 2), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted for the reasons fully set forth herein.

## I.     PROCEDURAL BACKGROUND

On June 2, 2021, the plaintiff, Angela Puccinelli, ("Plaintiff"), a student at SCSU, filed an amended complaint alleging that the Defendants violated her procedural and substantive due process rights and her equal protection rights under the Fourteenth Amendment of the United States Constitution.  Further, she alleged that SCSU discriminated against her based on her disabilities in violation of Section 504 of the Rehabilitation Act of 1973[1], (Section 504), and Title II of the Americans with Disabilities Act, (Title II)[2], and violated several state

---

[1] 28 U.S.C. Section 794 et seq.  Section 504 similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (2018).

[2] 42 U.S.C. Section 12131 et seq.  Title II provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

discrimination laws, when it dismissed her from the Comprehensive Special Education Teaching

Certification program at SCSU, (the "Program"). She alleged that the dismissal deprived her of

the opportunity to pursue a career in K-12 education. She seeks money damages and injunctive

relief. The Defendants submit this memorandum of law in support of their motion to dismiss

Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. Rule 12 (b) (1) for lack of subject

matter jurisdiction and pursuant to Fed. R. Civ. Pr. Rule 12(b)(6) for failure to state a claim.

## II.    FACTUAL BACKGROUND

Plaintiff was admitted to SCSU in April of 2017 and enrolled in the Program for the

purpose of earning a bachelor's degree in Special Education in grades K-12 and a

Comprehensive Special Education Teaching Certification. (Dkt. 2, ¶¶ 20-22.) Plaintiff

experiences anxiety and requested accommodations in the classroom at SCSU pursuant to

Section 504 and Title II. *Id.* at 23. Plaintiff sought and received accommodations in the

classroom. Ex. 3, ¶¶ 5-7. Plaintiff did not seek any accommodations specific to her student

teaching placement in the fall of 2019. *Id.* at 8.

On July 16, 2019, Associate Dean Nabbout-Chieben emailed Plaintiff requesting that

Plaintiff meet with her on July 23, 2019 to discuss email exchanges related to an incident that

occurred in a class on campus. Ex. 1, ¶ 6. In her email, Associate Dean Nabbout-Chieben

explained that she also wanted to discuss Plaintiff's overall performance in the Program. *Id*.

The subject line of the email was "Scaffolding for Success" and the meeting was to include Dr.

Terpstra, Defendant Faraclas and Associate Dean Nabbout-Chieben. *Id*. Plaintiff responded to

the email on the same day stating that she was unavailable to meet on July 23 and expressing

concern that Associate Dean Nabbout-Chieben was not meeting with "the other party".

---

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §
12132 (2018).

Associate Dean Nabbout-Chieben responded later that day explaining that Plaintiff could bring a support person to the meeting and asking for dates and times that would be convenient for Plaintiff and her support person. *Id*. On July 22, 2019, Associate Dean Nabbout-Chieben again emailed Plaintiff asking for meeting dates and times that would work for her. *Id.*

On July 29, 2019, Defendant Hegedus, Dean of the School of Education, sent a letter to Plaintiff informing her that she would not be student teaching in the fall semester of 2019. Ex. 2, ¶ 8. Defendant Hegedus offered Plaintiff the opportunity to discuss the decision with Associate Dean Nabbout-Chieben, her faculty advisor or the department chair. *Id.* at 9. On July 29, 2019, Plaintiff emailed Associate Dean Nabbout-Cheiban regarding meeting times. *Id*. On July 30, 2019, Associate Dean Nabbout-Cheiban emailed Plaintiff asking again that Plaintiff schedule a meeting. *Id.* at 10. She attached Defendant Hegedus' July 29, 2019 letter and reminded Plaintiff that, according to the School of Education's policy, students, like Plaintiff, who had incomplete course requirements are not permitted to student teach without prior approval of the Dean of the School of Education. *Id.*

On July 31, 2019, Plaintiff met with Defendant Hegedus and Dr. Terpstra to discuss Plaintiff's status in the Program, the incomplete grades on Plaintiff's transcript, and the prospect that she would student teach in the fall of 2019. *Id.* at 12. Following the meeting, Dr. Terpstra wrote a memo outlining the key points of the discussion, including details regarding a proposed plan that would allow Plaintiff to conduct her student teaching in the fall of 2019. *Id.* The plan included resolving the incomplete grades on Plaintiff's transcript. *Id.* Dr. Terpstra also noted that Dean Hegedus explained to Plaintiff that student teaching districts can and will remove students from a student teaching placement if there are issues and, if that were to occur in this case, it would be unlikely that SCSU could secure a second placement. *Id.* at 13. The reminder

was simply a restatement of policy, rather than, as Plaintiff alleges, a unique expectation placed on her alone. *Id.* at 14 and 15.

In the fall of 2019, Plaintiff was assigned to a special education classroom at Moran Middle School ("Moran") under the supervision of the classroom teacher, Kristen Rosenberry. Amended Compl. at 50. Soon after starting, Plaintiff raised concerns with Ms. Rosenberry regarding a student in the classroom who received accommodations pursuant to an IEP. *Id.* at 63.

On September 14, 2019, Defendant Faraclas, Department Chair of Special Education emailed Plaintiff to schedule a meeting to discuss issues at Moran. In the email, Defendant Faraclas told Plaintiff that she should not report to her student teaching assignment until further notice. Ex. 1 at ¶ 12. Defendant Faraclas specifically stated that an "important purpose of this meeting is to develop a plan to help you successfully resolve identified concerns in order to complete your student teaching placement. You may, if you wish, invite a support person to attend this meeting with you." *Id.* at 13.

Plaintiff scheduled a meeting with Defendant Faraclas for September 16, 2019. *Id.* at 14. On the morning of September 16, 2019, Defendant Faraclas cancelled the meeting and informed Plaintiff that, based on an "update" from staff at Moran, a higher level of review within SCSU's School of Education was required. *Id.* at 15 and 16.. Defendant Faraclas referred Plaintiff to the Scaffolding for Success policy in the Student Teaching handbook. *Id.* at 13.

On September 20, 2019, a Step One Scaffolding Meeting was held with Plaintiff, Defendant Faraclas and Dr. Bean, Department of Special Education. *Id.* at 17. During the meeting, the group discussed the concerns raised by the staff at Moran. *Id.* at 18. Plaintiff was informed that she would not be returning to the placement and was offered the opportunity to

discuss degree options. *Id*. Plaintiff declined the offer to meet again to discuss options. *Id.* at 19.

Following a phone call to Plaintiff from Defendant Faraclas, on November 5, 2019, Associate Dean Nabbout-Cheiban sent Plaintiff an email informing her that she was required to attend a School of Education Review Committee meeting to "discuss concerns that were raised by your cooperating teacher and resulted in terminating your student teaching placement this semester. The purpose of this meeting is to hear your input, discuss the concerns we received, asses your progress and your continuation in the program." Ex. 2 at ¶ 17. The email included an attachment from the Student Teaching Handbook at BB9 entitled "Scaffolding Success Action Plan 2019" that explained the policy regarding the meeting. *Id*.

The Scaffolding for Success Level 2 meeting was held on November 22, 2019. Plaintiff participated remotely in the meeting. *Id.* at 19. On December 5, 2019, Defendant Hegedus sent Plaintiff a memo setting forth the decision of the College of Education Review Committee. *Id.* at 20. The memo noted that the meeting had been called to address concerns raised by faculty and the cooperating teacher at the student teaching site as well as issues raised during September 20, 2019 and the July 31, 2019 meetings. *Id.* at 21. The memo set forth the academic and professional concerns and deficiencies considered by the Committee in reaching its decision to dismiss Plaintiff from the Program. *Id.* at 22. The memo attached a copy of the Scaffolding Success Action Policy with details regarding an appeal of the dismissal. *Id*. at 23.

Plaintiff claimed that she did not receive the memo initially, so she was given an extension of time to file an appeal. *Id.* at 24. On December 30, 2019, Plaintiff filed an appeal from the dismissal with Defendant Prezant, Provost and Vice President for Academic Affairs.

*Id.* at 25.  On January 2, 2020, Defendant Prezant denied the Plaintiff's appeal, noting that all

levels of the relevant policies were implemented accurately.  *Id.* at 26.

## III.    ARGUMENT

### A.    STANDARD FOR A MOTION TO DISMISS

#### 1.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV.

P. 12(b)(1)).  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must

take all facts alleged in the complaint as true and draw all reasonable inferences in favor of

plaintiff.  Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove

no set of facts which would entitle him or her to relief." *Raila v. United States*, 355 F.3d 118,

119 (2d Cir. 2004).  Importantly, "[a] plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at

113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)).  A court evaluating a Rule

12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference

to evidence outside the pleadings, such as affidavits." *Zappia Middle E. Constr. Co. v. Emirate of

Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

*See also Morrison v. Nat'l Australia Bank, Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008). The

consideration of such evidence does not convert the motion to dismiss into one for summary

judgment. *See Hicks v. Brophy*, 839 F. Supp. 948, 950 (D. Conn. 1993).

2.    **Rule 12(b)(6)**

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). Although the Court must accept all allegations in the complaints as true, this tenet is "inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect").

### B.    CLAIMS AGAINST SCSU

#### 1.    Section 1983 Claims – Counts 1, 2 and 3

The Section 1983 claims set forth in Counts 1, 2 and 3 as against SCSU must be dismissed on the grounds that they are barred by the Eleventh Amendment.  Section 1983 does not override the State's Eleventh Amendment immunity.  *See Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that section 1983 claims against states are not permitted absent the state's consent).  This immunity extends to state agencies, including state universities.  *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).  Further, while Section 1983 provides a cause of action against a "person" who violates another's federally protected rights while acting under color of state law, a state agency is not a "person" within the meaning of section 1983. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45(1989). Consequently, all of Plaintiffs' section 1983 claims against SCSU set forth in Counts 1, 2 and 3 must be dismissed.

#### 2.    Title II and Section 504 Claims – Counts 4 and 5

Plaintiff's claims against SCSU alleging violations of Title II and Section 504 must be dismissed because neither alleges sufficient facts to establish a plausible prima facie case under either statute.  Further, because Plaintiff fails to allege sufficient facts to establish a violation of Title II, it is barred by the Eleventh Amendment and must be dismissed[3].

---

[3] The Eleventh Amendment is not a bar to plaintiff's claim under Section 504 of the Rehabilitation Act, which was enacted under Congress' Spending Clause authority. *See Zahran v. N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 210 n.2 (N.D.N.Y. 2004). Thus, although the first task of evaluating whether the plaintiff has met her burden remains the same under either statute, the consequences of failing to meet that burden differs, i.e., whereas a plaintiff's failure to meet his initial burden under the ADA will result in that claim being barred by the Eleventh Amendment, such a failure under Section 504 will simply mean that the claim fails to satisfy the elements of the Rehabilitation Act.

Because the standards adopted by the ADA and the Rehabilitation Act are nearly

identical, courts consider the merits of these claims together.  *Dean v. Univ. at Buffalo Sch. Of*

*Med. & Biomedical Scis.,* 804 F.3d 178, 187 (2d Cir. 2015).  To establish a prima facie case of

discrimination in violation of either Title II or Section 504, the plaintiff must demonstrate that

(1) she is a qualified individual with a disability; (2) that the institution is an entity subject to the

ADA and the Rehabilitation Act; and (3) that the plaintiff was "denied the opportunity to

participate in or benefit from [the] defendant['s] services, programs, or activities, or [was]

otherwise discriminated against by [the] defendant[], by reason of [the]

plaintiff's disabilities."  *Id.*   Plaintiff has failed to allege facts to satisfy either prong 1 or 3 of a

prima facie case.

First, Plaintiff has failed to allege facts to show that she is a qualified person with a

disability under Title II or Section 504.  For purposes of determining whether a plaintiff is a

"qualified individual with a disability," 42 U.S.C. § 12131(2), the ADA defines "disability" to

include, *inter alia*, "a physical or mental impairment that substantially limits one or more major

life activities." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (*quoting* 42 U.S.C. §

12102(1)(A)).  "[M]ajor life activities include, but are not limited to, caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working." 42 U.S.C. § 12102(2)(A).  While Congress broadened the definition of "disability"

under the ADA in 2008[4], courts are still "[m]indful that not every impairment that affects

an individual's major life activities is a *substantially* limiting impairment, [and] in assessing

whether a plaintiff has a disability, [the Second Circuit] ha[s] been careful to distinguish

---

[4] *See* ADA Amendments Act (the "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553.

impairments which merely *affect* major life activities from those that *substantially limit* those

activities[.]" *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (emphases in

original) (internal quotation marks and citations omitted).

In this case, Plaintiff alleges that she is an individual with a disability, specifically

anxiety and post traumatic stress disorder[5], but she fails to allege any facts to establish that her

alleged disability "substantially limits" any life activities.   "A complaint alleging a violation of

the ADA must identify the life activity substantially impaired." *Kaplan v. Garfield First Assocs.,*

*LLC*, No. 11-CV-04631 (RRM) (LB), 2011 U.S. Dist. LEXIS 109681, 2011 WL 4530025, at *3

(E.D.N.Y. Sept. 27, 2011) (*citing Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002)).

Alleging the existence of "[a] medical condition alone, even a serious one," does not suffice,

because the condition "must substantially limit a major life activity." *Louis v. New York City*

*Hous. Auth.,* 152 F. Supp. 3d 143, 150, 2016 U.S. Dist. LEXIS 8333, at 12, (S.D.N.Y. Jan. 14,

2016).  *See Graham v. Macy's Inc.,* No. 14 CIV. 3192 (PAE), 2015 U.S. Dist. LEXIS 35588,

2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (finding that complaint did "not provide

sufficient factual allegations to establish that [plaintiff's] bipolar disorder was disabling" under

ADA); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 401 (S.D.N.Y.

2011) (dismissing ADA claim because complaint alleged no facts "tending to show that

[plaintiff's] medical condition limits, let alone substantially limits," any major life

activity); *Hallgren v. Bell Atl. Corp.*, No. 99 CIV. 11937 (CM), 2000 U.S. Dist. LEXIS 7630,

---

[5] To the extent Plaintiff is claiming pregnancy as her disability, that claim fails as well.  Courts have held pregnancy discrimination is a sex-based discrimination claim and is not considered a disability under the ADA. *See Stoud v. BMC Software, Inc.,* Civil Action No. H-06-1402, 2007 WL 9753127, at *12 (S.D. Tex. Sept. 18, 2007) (Gilmore, J.); *see also Ross v. GTE Wireless of Hous., Inc.,* Civil Action No. H-98-4046, 2000 WL 1279618, at *8 (S.D. Tex. Jan. 14, 2000) (Hoyt, J.). The Rehab Act and the ADA are not proper vehicles for plaintiffs to bring discrimination claims based on pregnancy. *See Stoud,* 2007 WL 9753127, at *12.

2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000) (dismissing ADA claim where plaintiff listed various conditions but did not specify how the conditions limited her activities). Because Plaintiff fails to allege any facts regarding how her alleged disability substantially limits a major life activity, she fails to allege a Title II or Section 504 violation.

Second, even if Plaintiff had alleged sufficient facts to demonstrate that she is a qualified person with a disability under Title II and Section 504, she also has failed to allege sufficient facts to demonstrate that SCSU discriminated against her based on her disability, the third element of a Title II or Section 504 claim. "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted). Plaintiff appears to allege both disparate treatment and failure to make reasonable accommodations, but she fails to allege sufficient facts to state a claim under either theory.

To establish a prima facie case of disparate treatment under Title II, a plaintiff must present evidence that discriminatory animus against her "was *a* significant factor in the position taken by the … decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002), (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir.1995)). Similarly, but with some difference, to establish a prima facie case of disparate treatment under Section 504, Plaintiff must show that the Defendants dismissed her from the Program *solely* because of her disabilities. *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 49 (citing *Flight v. Gloeckler*, 68 F.3d 61, 64 (2d Cir.1995)). Plaintiff has failed to adequately plead facts to satisfy either standard.

A bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim. *Moore v. City of New York,* 2017 U.S. Dist. LEXIS 379, *58 (SDNY 2017), *citing Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011). *See also Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 342-43 (EDNY 2014) (complaint dismissed because it failed to adequately allege, except in most conclusory fashion, that plaintiff's disability was a substantial factor in failing grade). Simply labeling conduct as having been performed with a discriminatory intent is insufficient to allege that the actions in question rise to that level.

Here, Plaintiff has failed to plead plausible facts to establish discriminatory animus. To the contrary, the facts alleged and the documents relied upon by Plaintiff support a conclusion that Plaintiff's dismissal from the Program was based solely on her failure to sufficiently perform academically, particularly in her student teaching placement, and had nothing whatsoever to do with any animus regarding her disability. In the summer of 2019, Plaintiff was informed that her student teaching position for the fall of 2019 was in jeopardy because of academic performance issues, including incomplete grades on her transcript. Ex. 1 at ¶¶ 6-10. After a meeting to discuss these concerns, Plaintiff was permitted to remedy the incomplete grades and begin the fall semester in a student teaching position. Shortly into the semester, the teaching site, Moran Middle School decided that Plaintiff could not return to the student teaching position due to issues related to Plaintiff's professionalism in the classroom. Ex. 1 at ¶ 12. After two meetings with faculty, each allowing the Plaintiff the opportunity to address concerns and be accompanied by a support person, the Department of Education reached a decision to dismiss her from the Program based on its careful and deliberate assessment of Plaintiff's academic performance. Ex. 1 at ¶¶ 17 and 18; Ex. 2 at ¶¶ 18-23.

Plaintiff's allegations regarding alleged incidents that occurred prior to the fall 2019 student teaching placement offer no support to a claim of discriminatory animus. She alleges that, in the spring of 2019, she experienced "bullying" from a SCSU professor and students, but SCSU failed to address the episodes. Amended Compl. at ¶ 26-29. Even if this were true, which it is not, there are no facts alleged that suggest a causal connection between the alleged "bullying" incidents and the Plaintiff's dismissal from the Program. The professor named by Plaintiff is not a defendant and there is no allegation that he had any role in the decision to dismiss her from the Program. There are also no allegations indicating that any of the defendants had any knowledge of the alleged bullying by other students.

Additionally, while plaintiff also alleges that SCSU has treated her "unequally compared to her non-disabled peers", she does not plead a single fact about individual comparators or how they were treated differently than she was. Therefore, she fails to establish an essential element of her Title II discrimination claim. *See Lynch v. Conn. Judicial Branch,* 2020 U.S. Dist. LEXIS 183656, at *49-50 (D. Conn. Sept. 30, 2020). "[W]here the plaintiff fails to allege that disabled individuals are being treated differently from non-disabled individuals, he or she has not stated a claim". *Silman v. Utica College,* 2016 U.S. Dist. LEXIS 106828, *29-30 (NDNY Aug. 12, 206).

Given that nothing in the Amended Complaint raises the plausible inference that Plaintiff's disability was a substantial factor in her dismissal or that she was dismissed solely because of her disability, she has failed to allege a claim under the disparate treatment theory. Similarly, Plaintiff has failed to plead sufficient facts to constitute a prima facie failure to accommodate claim.

Title II and Section 504 mandate "reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled." *Felix v. New York City*

*Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003). A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). However, the Second Circuit has emphasized the distinction "between (i) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits." *Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000). A demand for the latter does not give rise to a cognizable claim, as "the disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be." *Id.* "Title II does not require States to employ any and all means to make . . . services available to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004). Ultimately, "the question of what constitutes a reasonable accommodation under the ADA 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)).

As a threshold matter, to survive a motion to dismiss on a reasonable accommodation claim, a plaintiff must allege that she sought and was denied a specific accommodation. *See Getso V. City Univ. of N.Y.*, 2009 U.S. Dist. LEXIS 108316 (SDNY November 17, 2009). A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); *Syville v. city of New York,* 2018 U.S. Dist. LEXIS 31816, *8 (S. D. N. Y>

Feb. 26, 2018), *citing Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 309 (1st Cir. 2003) ("The operative provision, 42 U.S.C. § 12182(b)(2)(A)(ii), requires a person with a disability to request a reasonable and necessary modification, thereby informing the operator of a public accommodation about the disability.").

Here, Plaintiff has failed to allege any facts to demonstrate that SCSU ever denied any of her requests for reasonable accommodations, including during her student teaching placement. In the education context, a plaintiff alleging a failure to accommodate "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow the plaintiff to meet the essential requirements of the service, program, or activity at issue." *Dean*, 804 F.3d at 190. Plaintiff has failed to meet this burden. In fact, SCSU granted each of Plaintiff's requests for accommodations in the classroom, granting her additional time for exams and flexibility in assignment deadlines. *See* Ex. 3 at ¶¶ 5-8. Plaintiff never made any requests for any additional accommodations specific to her student teaching placement in the fall of 2019. *Id.* at 8. Therefore, Plaintiff's reasonable accommodation claim cannot survive a motion to dismiss.

Having failed to allege sufficient facts to demonstrate a violation of Title II or Section 504 under either the disparate treatment or failure to accommodate theories, the claims must be dismissed. Further, the failure to allege a violation of Title II provides SCSU with Eleventh Amendment immunity as to the Title II claim. The Eleventh Amendment bars suits against a State or one of its agencies or departments, regardless of the type of relief sought unless (i) the State consents to the suit, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), or (ii) Congress abrogates Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment, *id* at 99. Because there is no indication that

SCSU has consented to suit in this case, the issue is whether Congress has validly abrogated SCSU's Eleventh Amendment immunity. To decide that issue, "[a court] must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) (internal quotation marks omitted).

As to the first question, Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity when a State is sued under Title II of the ADA.[6]  As to the second question, in *United States v. Georgia*, the Supreme Court established a three-step process to determine whether Congress has validly abrogated a state's Eleventh Amendment immunity in each Title II claim:

> "[A court must] determine . . ., *on a claim-by-claim basis*, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."

546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) (emphasis in original).  "[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." *Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013), *citing Buchanan v. Maine*, 469 F.3d 158, 172-73 (1st Cir. 2006) ("If the State's conduct does not violate Title II, the court does not proceed to the next step in the [United States v. Georgia] analysis. The claim ends.").

---

[6] "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.

As a result, the first task in determining whether the Eleventh Amendment bars the Title II claim in this case is to determine whether Plaintiff has stated a Title II violation. As set forth above, she has not. Because Plaintiff has not met her burden to allege a plausible prima facie case under Title II, the claim is barred by the Eleventh Amendment.

### 3.    State Law Claims – Counts 6, 6 and 7[7]

In addition, the state law claims against SCSU set forth Counts 6, 6, and 7 are barred by the Eleventh Amendment. A federal court lacks authority to declare that state entities have violated state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541–42 (2002) (holding that the supplemental jurisdiction statute does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States"); *Hoffman v. City Coll.,* 2021 U.S. Dist. LEXIS 62594, *11-12, 2021 WL 1226498 (Eleventh Amendment bars suits alleging violations of state laws unless state has consented to being sued in federal forum); *Dennehy v. Soto*, 2018 WL 4936003, at *2 (D. Conn. Oct. 11, 2018) (Shea, J.) (holding that it is well-established that "a federal court may not sit in judgment of whether a State or a State official has complied with its own law"). Therefore, Counts 6, 6, and 7 must be dismissed in whole.

### C.    CLAIMS AGAINST INDIVIDUAL DEFENDANTS

In each of her Section 1983 counts, Plaintiff names Defendants Bertolini, Hegedus, Prezant and Faraclas in their official capacities, and Defendants Hegedus, Prezant and Faraclas in their individual capacities. As to the individual defendants named in their official capacities, any claims against them for money damages are barred by the Eleventh Amendment. Additionally, any claims against them for declaratory and/or injunctive are also barred by the

---

[7] The Amended Complaint appears to be misnumbered in that it labels two counts as number 6.

Eleventh Amendment because those claims fail to meet the *Ex Parte Young* exception.  As to claims for money damages against the individual defendants in their individual capacities, those claims must be dismissed on the grounds of qualified immunity.

Further, as to Defendant Bertolini, any claim against him in his individual capacity must be dismissed on the alternative ground that Plaintiff has failed to allege any facts to demonstrate that he had any personal involvement in the actions alleged by the plaintiff.  Without any personal involvement, the claims against him must be dismissed.  Finally, the plaintiff has failed to allege that any of the individual Defendants has any authority to grant the relief requested and, therefore, those claims must be dismissed on that ground.

### 1.    Claims against Individual Defendants in their Official Capacities for Money Damages

To the extent plaintiff is seeking monetary damages against the defendants in their official capacities under Section 1983, those claims are barred by the Eleventh Amendment.  A suit against a state official in his or her official capacity for monetary damages is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Consequently, the Eleventh Amendment shields such officers to the same extent that it shields the state. *Garcia*, 280 F.3d at 107; *Stanescu v. State of Conn., Second Injury Fund*, 112 F.3d 505 (2d Cir. 1997).

### 2.    Claims against Individual Defendants in their Official Capacities for Declaratory and Injunctive Relief.

The Eleventh Amendment does not preclude suits against State officers in their official capacity seeking prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  *See also Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985). Under *Ex parte Young*, acts of state officers that violate federal constitutional rights are deemed not to be acts of the State and may be the subject of relief in

federal court. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d

114 (1985). Whether a plaintiff's claim falls under the *Ex parte Young* exception to the Eleventh

Amendment's bar against suing a State is a "straightforward inquiry" that asks "'whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct.

1753, 152 L. Ed. 2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261,

296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997)).

      For the reasons set forth below, each claim against the individual defendants in their

official capacities seeking declaratory or injunctive relief does not fall within the *Ex Parte Young*

exception and, therefore, is barred by the Eleventh Amendment.  As such, they must be

dismissed.

> a)    *Claims against Individual Defendants in their official capacities*
> *seeking a declaratory judgment regarding past behavior do not fall within*
> *the Ex Parte Young exception and, therefore, are barred.*

      Plaintiff asks this court to declare that Defendants' past practices violated her Fourteenth

Amendment rights.  Given that Plaintiff is seeking a declaratory judgment that defendants' past

conduct violated the law, the relief sought is clearly not prospective and, therefore, such claims

do not fall within the *Ex Parte Young* exception. *See Puerto Rico Aqueduct and Sewer Authority*

*v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993)  (the

Eleventh Amendment "does not permit judgments against State officers declaring that they

violated federal law in the past").  Therefore, the claims should be dismissed.

> b)    *Claims against Individual Defendants in their official capacities*
> *seeking prospective injunctive relief fail to meet the Ex Parte Young*
> *exception, and, therefore are barred.*

Plaintiff also seeks prospective injunctive relief asking the court to direct Defendants to take affirmative action, including readmitting Plaintiff to the Program, based on the alleged Fourteenth Amendment violations.  However, because Plaintiff has failed to allege sufficient facts to plausibly demonstrate an ongoing violation of any constitutional rights, the claims do not fit within the *Ex Parte Young* exception and are barred by the Eleventh Amendment.  Therefore, they must be dismissed.

*(1)    Plaintiff's substantive due process claim fails*

Plaintiff alleges that the defendants interfered with her property interest in her education in violation of her substantive due process rights under the Fourteenth Amendment.  Further, Plaintiff alleges that the Defendants have deprived her of the right to pursue a career in special education.  Neither substantive due process claim has merit.

To state a substantive Due Process claim, a plaintiff must establish that a constitutionally protected liberty or property interest was infringed in an arbitrary or irrational manner that shocks the conscience. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999); *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington v. Town Bd.*, 31 F.3d 1191, 1196 (2d Cir. 1994).  However, rights are only protected by substantive due process if they are fundamental or "implicit in the concept of ordered liberty." *Local 342*, 31 F.3d at 1196 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937)).  "[W]here the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342*, 31 F.3d at 1196.

The property right a student has in her continuing education at a state university is not a fundamental right.  *Sutton v. Stony Brook Univ.,* 2021 U.S. Dist. LEXIS 156083, *38 (August 18, 2021), *citing Bryant v. N.Y. State Educ. Dep't.,* 692 F.3d 202, 217-18 (2d Cir. 2012).  Rather, it

is one based in state contract law.  The Second Circuit has held that "simple, state-law

contractual rights, without more, are not worthy of substantive due process protection." *Tessler*,

451 F. App'x at 32-33 (citing *Local 342*, 31 F.3d at 1196) (internal quotations omitted); *see*

*also Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010); *Marino v. City Univ. of*

*N.Y.,* 18 F. Supp. 3d 320, 339 (EDNY 2014).  "While property interests are protected

by *procedural* due process even though the interest is derived from state law rather than the

Constitution, *substantive* due process rights are created only by the Constitution." *Local 342*, 31

F.3d at 1196 (emphasis added). Accordingly, Plaintiff's claim based on a property interest in

continuous enrollment is without merit.

　　　Further, Plaintiff's substantive due process claim that the Defendants' actions have

prevented her from asserting her liberty interest in pursuing her chosen profession as a teacher

also fails.   "While a person's right to pursue the profession of his choice is recognized as a

constitutionally protected liberty interest, courts in the Second Circuit have consistently held one

must have no ability to practice one's profession at all in order to state a claim for deprivation of

a liberty interest." *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d 558, 579-80

(E.D.N.Y. 2011) (Seybert, J.) (*citing Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, No.

96-CV-9336, 1997 U.S. App. LEXIS 28449, 1997 WL 625006, at *1 (2d Cir. Oct. 9,

1997); *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (McMahon, J.); *Schultz*

*v. Inc. Vill. of Bellport*, No. 08-CV-0930, 2010 U.S. Dist. LEXIS 104804, 2010 WL 3924751, at

*7 (E.D.**N.Y.** Sept. 30, 2010) (Bianco, J.)) (holding a "substantive due process claim based on

infringement of [right to pursue chosen occupation] will succeed only where a person is blocked

from participating in a particular field" (citation omitted)).

Here, the individual defendants did not deny Plaintiff all opportunities to practice in her chosen profession. It is undeniable that Plaintiff has been dismissed from the education program at SCSU, but Plaintiff has failed to plead any facts to allege that she is precluded from pursuing her goal at SCSU at some time in the future or at another institution.  Given that the Individual Defendants did not fully preclude Plaintiff from engaging in her chosen profession, Plaintiff has failed to state a substantive due process claim based on her right to pursue a teaching career.

Finally, even if the court were to find that plaintiff has a fundamental property or liberty interest in either her education at SCSU or her career in teaching, the Plaintiff has failed to allege sufficient facts to demonstrate a violation of substantive due process.  "To establish a substantive due process claim based on an academic decision, a plaintiff must show such 'a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'"  *Wolff v. State Univ. of N.Y.*, 678 Fed. Appx. 4, 5 (2d Cir. 2017) *citing Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985). For academic decisions, educational decisions shall not be disturbed "unless there is evidence . . . that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Wolff,* 678 Fed. Appx. at 6, *citing Clements v. Nassau Cty.*, 835 F.2d 1000, 1004 (2d Cir. 1987).  Plaintiff has not alleged any facts to support such a claim.

Plaintiff alleges in conclusory fashion that the defendants acted with actual malice and/or deliberate indifference toward her by not following school policy and dismissing her from the program.  The Plaintiff's allegations and the documents underlying them belie Plaintiff's claims. Instead, the chronology of events set forth in the allegations establish that the defendants had substantial concerns about plaintiff's professionalism in a student teaching setting since at least

July of 2019.  The summary of the July 29, 2019 meeting with the plaintiff evidenced an intention to allow the plaintiff the opportunity to succeed in a student teaching placement despite concerns about her performance.  Ex. 1 at ¶¶ 11 and 12.  The email communication and the series of meetings spanning the months between July and December 2019 establish that the Individual Defendants acted with appropriate professional judgment given the academic concerns.  See Exs. 1 and 2.

For these reasons, Plaintiff's substantive Due Process claim fails to state an ongoing violation of substantive due process and must be dismissed.

*(2)    Plaintiff's procedural due process claim fails*

Plaintiff has also failed to allege sufficient facts to plausibly state an ongoing violation of her procedural due process rights.  To state a Fourteenth Amendment procedural due process claim, Plaintiff must allege that (1) her dismissal from the Program deprived her of either a "liberty" or "property" interest, *Bd. Of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978), and (2) the state's process was "constitutionally [in]adequate," *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). *See also Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cr. 2017).  Plaintiff alleges that she had a property interest in her education and a clear entitlement to a bachelor's degree in the Program. She alleges that the defendants violated these rights in a multitude of ways essentially by failing to follow the procedures set forth in the SCSU's academic policy and failing to give her notice and opportunity to be heard.  Even assuming a property or liberty interest was at stake, Plaintiff's procedural due process claim fails because the procedures followed by the Defendants met all requirements under the Constitution.

The threshold question in a procedural due process challenge is whether the plaintiff has been deprived of a protected property or liberty interest. Courts in the Second Circuit have acknowledged that students at public universities have a property interest entitled to procedural due process protection under the U.S. Constitution. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (noting that New York recognizes an "implied contract" between a university and its students, which requires the institution to "act in good faith in its dealing with its students," and that this implied contract "provides the basis for a property interest that would be entitled to constitutional protection"); *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 337 (E.D.N.Y. 2014) (finding "no question that Plaintiff has a 'liberty' or 'property' interest in her dealings with her state-run college" based upon the implied contract law in New York). Even if the court assumes that Plaintiff had a property right entitled to procedural due process protection, she has not alleged facts to demonstrate that the individual defendants failed to provide sufficient procedural due process prior to her academic dismissal.

The process to which Plaintiff was entitled depends on whether Plaintiff's dismissal from the Program was disciplinary or academic in nature. If Plaintiff's dismissal was disciplinary, she would be entitled to "oral or written notice of the charges against h[er] and, if [s]he denies them, an explanation of the evidence the authorities have and an opportunity to present h[er] side of the story." *Horowitz*, 435 U.S. at 85 (quoting *Goss v. Lopez*, 419 U.S. 565, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)). There are "far less stringent procedural requirements" for academic dismissals. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191-92 (2d Cir. 2015) (quoting *Horowitz*, 435 U.S. at 86). A student dismissed for academic reasons is entitled to notice and a "careful and deliberate" ultimate decision. *Dean*, 804 F.3d at 191-92 (noting that the notice requirement was satisfied in *Horowitz* when the school "fully informed

[the student] of the faculty's dissatisfaction with [the student's] progress and the danger that this posed to timely graduation and continued enrollment") (quoting *Horowitz*, 435 U.S. at 85).

While the line between academic and disciplinary decisions is not always clear, courts have considered a dismissal to be "academic" where the rationale has to do with the student's deficiency in the skills necessary in school or in the career for which the school is training her, including lack of professionalism. *See, Sutton v. Stony Brook Univ.,* 2021 U.S. Dist. LEXIS 156083, *38 (E. D. N. Y. August 18, 2021) (finding Plaintiff's dismissal academic because it related to issues with her preparedness, lateness, professionalism, and performance reviews with regard to her student teaching); \ *Wolff*, 2016 U.S. Dist. LEXIS 192245, 2016 WL 9022503, at *18 (upholding dismissal of student as academic due to faculty concerns about his professionalism and suitability to be a teacher); *Horowitz*, 435 U.S. at 90 (holding that medical resident's dismissal was academic decision because it "rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal");  *Al-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355, 358-59 (6th Cir. 2015) (holding that decision to dismiss medical student for lack of professionalism was academic judgment);  *Ezekwo*, 940 F.2d at 784 (suggesting that concerns about interpersonal skills and combative nature may have provided academic basis for decision); *Knapik v. Mary Hitchcock Mem'l Hosp.*, 90 F. Supp. 3d 292, 300-01 (D. Vt. 2015) ("For purposes of judicial review . . . 'academic' decisions encompass ethics and professionalism" if those qualities are "an essential part" of the student's training).

On the other hand, disciplinary dismissals are typically those involving "the violation by a student of valid rules of conduct." *Horowitz*, 435 U.S. at 86-90. "Disciplinary dismissals, being more objective in nature and not dependent upon the analytical expertise of professional

academicians, will bear a 'resemblance to traditional judicial and administrative factfinding[.]'" *Fenje v. Feld*, 398 F.3d 620, 625 (7ᵗʰ Cir. 2005) (quoting *Horowitz*, 435 U.S. at 88-89).

Plaintiff's dismissal from the Program was academic in nature. The notes from the July 31, 2019 meeting regarding Plaintiff's student teaching for the fall of 2019 includes a list of academic concerns related to Plaintiff's professionalism and academic status. Ex. 2 at ¶¶ at 11-12. The memo cited concerns regarding Plaintiff's preparedness, lateness, professionalism, and performance with regard to her prospective student teaching. Exs. 1 and 2. Likewise, notes from the September 20, 2019 meeting regarding Plaintiff's removal from the student teaching position at Moran also refer solely to academic and professional concerns regarding Plaintiff's performance. Ex. 1 at ¶¶ 17-18. Finally, the decision to dismiss Plaintiff following the November 22, 2019 meeting was based on academic and professional concerns. Ex. 2 at ¶¶ 19-23. Indeed, other courts have determined that dismissals were academic in nature where they were based on professionalism concerns. *See, e.g., Wolff,* 2016 U.S. Dist. LEXIS 192245, 2016 WL 9022503, at *18 (upholding dismissal of student as academic due to faculty concerns about his professionalism and suitability to be a teacher).

Further, Plaintiff herself does not allege any facts suggesting that her dismissal was for disciplinary reasons. She does not claim that Defendants cited her for violating any rules of student conduct or that she was accused of cheating. *See Horowitz*, 435 U.S. at 86; *Papelino,* 633 F.3d at 95. Based on the Plaintiff's allegations and the documents to which she referred, her dismissal was an academic decision. *See Al-Dabagh*, 777 F.3d at 359 (finding that the plaintiff's dismissal on "professionalism grounds amounts to a deference-receiving academic judgment ") *cert. denied*, ___ U.S. ___, 135 S. Ct. 2817, 192 L. Ed. 2d 850 (2015); *Shaboon v. Duncan*,

252 F.3d 722, 731 (5th Cir. 2001) ("Although Shaboon's intransigence might suggest that her dismissal was disciplinary, her refusal to acknowledge and deal with her problems furnished a sound academic basis for her dismissal."); *Knapik*, 90 F. Supp. 3d at 301 (finding decision to dismiss the plaintiff from hospital's residency program to be academic in nature based on "concerns about professionalism and ethics").

        Given the academic nature of her dismissal, the Fourteenth Amendment's procedural due process protections guaranteed Plaintiff notice and a "careful and deliberate" ultimate decision. *Wolff,* 679 F. App'x at 6 (*citing Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Scis*., 804 F.3d at 191).  In academic dismissals, a court "should show great respect for the faculty's professional judgment" and "may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Sutton v. Stony Brook Univ.,* 2020 U.S. Dist. LEXIS 206999, *42, 2020 WL 6532937, *citing Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523, (1985). "The deference given to academic institutions is amplified at the highest levels of education as the 'instruction becomes both more individualized and more specialized.'" *Marino*, 18 F. Supp. 3d at 337-38 (quoting *Horowitz,* 435 U.S. at 90). Thus, "[c]ourts do not intrude on the authority of colleges to dismiss students for purely academic reasons." *See Chandrapaul v. City Univ. of N.Y.,* No. 14-CV-0790, 2016 U.S. Dist. LEXIS 52961, 2016 WL 1611468, at *25 (E.D.N.Y. April 20, 2016) ("Courts may not intervene to require colleges 'to confer diplomas on those who have been deemed to be unqualified.'").  It is well-established that "a student facing academic dismissal is not entitled to a hearing or to cross-examine witnesses." *McCann v. Univ. at Buffalo*, No. 13-CV-0381, 2016 U.S. Dist. LEXIS 76829, *38 (W.D.N.Y. June 10, 2016) (*citing Goss*, 419 U.S. at 584); *Horowitz*, 435 U.S. at 86

n.3 ("a hearing is not required by the Due Process Clause of the Fourteenth Amendment").

Further, the Second Circuit has made clear that there is no constitutional right to review or

appeal school disciplinary decisions. *See Dean*, 804 F.3d at 193; *Patrick v. Success Acad.*

*Charter Sch., Inc.,* 354 F. Supp. 3d 185, 205 (E.D.N.Y. 2018) ("Plaintiffs' claim 'runs counter to

precedent holding that those subject to school discipline do not enjoy a due process right

to any appellate review.'" (citation omitted) (emphasis in original)) (collecting cases).

     In light of these guiding principles, the procedures offered by SCSU and its officials

cannot be characterized as constitutionally inadequate. In fact, the defendants provided Plaintiff

with a greater procedural opportunity to seek redress than the Constitution requires. Plaintiff was

given notice and a full and fair opportunity to be heard at each step in the process, including the

right to appeal the decision. Although Plaintiff did not receive the remedy she desired, she did

receive the procedural protections guaranteed by the Constitution.  Plaintiff received a letter on

July 29, 2019 notifying her of concerns with her professional and academic readiness to accept a

student teaching position. Ex. 2 at ¶¶ 8-10.  Plaintiff requested a meeting and met with

Defendant Hegedus on July 31, 2019. *Id.* at 11.  During that meeting, Plaintiff was notified that

there were concerns with her professionalism and academic standing that needed to be resolved

in order to place her in a student teaching position. *Id.* at 12.  On September 20, 2019, Plaintiff

met with faculty in a Level One Scaffolding meeting to discuss Moran's decision to discontinue

her student teaching placement based on her professional performance in the classroom.  Ex. 1 at

¶¶ 17-18.  On November 5, 2019, Plaintiff was notified that a School of Education Review

Committee meeting would be held to "discuss concerns that were raised by your cooperating

teacher and resulted in terminating your student teaching placement this semester.  The purpose

of this meeting is to hear your input, discuss the concerns we received, asses your progress and

your continuation in the program." Ex. 2 at ¶ 17.  The email included an attachment from the

Student Teaching Handbook at BB9 entitled "Scaffolding Success Action Plan 2019".  *Id.*  On

November 22, 2019, Plaintiff participated remotely in the Level Two Scaffolding for Success

meeting.  *Id.* at 19.  After that meeting, in a letter dated December 5, 2019, Plaintiff was notified

of the decision to dismiss her from the Program.  Id. at 20.  Although Plaintiff claims that she did

not receive a copy of the letter within the appeal time, she was granted and extension when she

requested one.  *Id.* at 24.  Plaintiff appealed the decision on December 30, 2019 and on January

2, 2020, Plaintiff's appeal was denied.  *Id.* at 25-26.

In sum, Plaintiff's allegations and the documents upon which she relies reflect a careful

and deliberate process and decision, involving notice, multiple meetings during which she was

provided an opportunity to be heard, and an appeal, all of which more than satisfied

constitutional procedural due process requirements.  In fact, Plaintiff received more than

the process she was due.  *See Perez v. Texas A & M Univ. at Corpus Christi*, 589 F. App'x 244,

250 (5th Cir. 2014) (concluding that "the University provided Perez with adequate notice of her

poor academic status and used a careful and deliberate process in dismissing her"); *Fenje*, 398

F.3d at 627 (holding that the plaintiff received adequate notice where "[h]e was fully informed of

[the administrator's] concerns"); *Shaboon*, 252 F.3d at 731 (finding that notice and pre-dismissal

meeting were sufficient process even if the plaintiff's dismissal was disciplinary); *Richmond v.*

*Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000); *Nayak v. Pivarunas*, No. 07-CV-248S, 2011 U.S.

Dist. LEXIS 26315, at *24, 2011 WL 917387, at *9 (W.D.N.Y. Mar. 15, 2011); *Ogindo v.*

*DeFleur*, No. 07-CV-1322, 2010 U.S. Dist. LEXIS 6478, at *27, 2010 WL 410374, at *9

(N.D.N.Y. Jan. 27, 2010).

Plaintiff relies on alleged violations of university policies as evidence that the defendants violated her procedural due process rights. She claims that the defendants did not abide by policies in that they failed to provide her the opportunity to participate in the Scaffolding for Success meetings. In fact, plaintiff did participate in the Scaffolding for Success meetings. However, even if she did not have that opportunity, a university's departure from its own rules and regulations does not, by itself, violate procedural due process. *See, e.g.*; *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016), *aff'd sub nom. Dung Quoc Pham v. Blaylock*, 712 Fed. Appx. 360 (5th Cir. 2017), *cert. denied,* 138 S. Ct. 1548 (2018); *Brown v. Univ. of Kansas*, 16 F.Supp.3d 1275, 1290 (D. Kan.2014) *aff'd* 599 Fed.Appx. 833 (10th Cir. 2015); *Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000); *Schuler v. Univ. of Minn.,* 788 F.2d 510, 515 (8th Cir. 1986); *Jones v. Bd. of Gov. of North Carolina*, 704 F.2d 713, 717 (4th Cir. 1983). The relevant inquiry at all times is whether or not a plaintiff has been afforded *constitutionally* adequate notice and a *constitutionally* adequate hearing. "A school's departure from its own hearing rules amounts to a due process violation only when the departure 'results in a procedure which itself impinges on due process rights.' ... plaintiff's rights are dictated by the Constitution, 'not internal school rules or policies.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017). Therefore, even if the Defendants did not follow internal policies, it is not determinative of a procedural due process violation. The undisputed procedures afforded Plaintiff in connection with her dismissal from the Program satisfied Plaintiff's procedural due process rights under the U.S. Constitution.

### (3) *Plaintiff's equal protection claim fails.*

Plaintiff has also alleged that the Individual Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment by dismissing her from the program and treating her differently than non-disabled peers in doing so. First, because there are statutes

that expressly provide relief from disability-based discrimination claims, those claims are generally not cognizable under Section 1983.  Second, even if the court could consider the equal protection claim under Section 1983, Plaintiff has failed to sufficiently plead violation under either a selective enforcement or class of one theory.  Plaintiff does not plead facts to show that other similarly situated non-disabled students with whom she has a high degree of similarity were treated differently than she was.  Therefore, she has failed to state a claim against the Individual Defendants for violating her rights under the Equal Protection Clause.

First, given that the essence of Plaintiff's Section 1983 equal protection claim is disability-based discrimination, it must be dismissed given that those rights are secured by the ADA, and, therefore, not cognizable under Section 1983.  *See Taylor v. Norwalk Cmty. College,* 2015 U.S. Dist. LEXIS 13046, *54-55 (D. Conn. September 28, 2015)(dismissing Section 1983 equal protection claim based on disability based discrimination); *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 581, 590 (S.D.N.Y. 2014) ("freedom from discrimination on the basis of disability is a right secured by statute [42 U.S.C. § 12131 *et seq.*] (the "Americans with Disabilities Act" or "ADA"); . . . not by the Constitution"), *appeal dismissed* , No. 14-742, 2014 U.S. App. LEXIS 24975 (2d Cir. Apr. 9, 2014); *EC ex rel. RC v. Cnty. of Suffolk*, 882 F.Supp. 323, 355 (E.D.N.Y. 2012) ("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983."); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828 (KMK), 2009 U.S. Dist. LEXIS 91738, 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss § 1983 claim because "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that ... the ADA [is] designed to protect against, not the Equal Protection Clause") (internal quotation marks omitted)). *See also Patterson v. Cnty. of*

*Oneida*, 375 F.3d 206, 225 (2d Cir.2004) ("[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement"); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord O'Leary v. Town of Huntington*, No. 11 Civ. 3754(JFB), 2012 U.S. Dist. LEXIS 126086, 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012) ("Failure [of employer] to provide a reasonable accommodation [to disabled employee] cannot form the basis of an Equal Protection claim."). Thus, Plaintiff's claim that she was discriminated against on the basis of her disability is not actionable under Section 1983.

Should this court disagree, Plaintiff's equal protection claim fails to allege sufficient facts to plausibly plead a violation under either the selective enforcement or class of one theory. "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). In evaluating an equal protection claim, the Court must first determine the appropriate level of scrutiny to apply. Unless state action burdens a suspect class or impinges upon a fundamental right, that action is subject to rational basis review. *See Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review. *See City of Cleburne*, 473 U.S. at 442-47. Under rational basis review, a court must uphold the state action "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320.

In order to establish an equal protection violation based upon selective enforcement, the plaintiff must prove that, "(1) in comparison with others similarly situated, she was selectively treated, and (2) that such selective treatments was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (*quoting LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  A plaintiff who raises this type of selective enforcement claim "must 'prove that the disparate treatment was *caused* by the impermissible motivation.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (*quoting Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (emphasis in original)). To show that she was "similarly situated" to another person treated differently, "'the plaintiff's and the comparator's circumstances must bear a reasonably close resemblance.'" *Id.* at 96 (*quoting Brown v. Daikin Am. Inc.,* 756 F.3d 219, 230 (2d Cir. 2014)).

Plaintiff has failed to plead sufficient facts to show that similarly situated non-disabled students in the Program were treated differently from her.   The Amended Complaint, in conclusory fashion, alleges that Plaintiff was treated differently from other similarly situated people.  Amended Compl., p. 122. However, the Complaint contains no allegations which, if taken as true, would support a conclusion that these unnamed persons were similarly situated to Plaintiff.  Indeed, it contains no allegations about the comparators at all.  In short, Plaintiff "fails to allege why other individuals were similarly situated to [her]." *Thurmond v. Univ. of Conn.,* 2019 U.S. Dist. LEXIS 67690, *12-13 (D. Conn. April 22, 2019), *citing Jones v. Bay Shore Union Free Sch. Dist.*, 666 F. App'x 92, 94 (2d Cir. 2016) (summary order) (emphasis in original)).  A plaintiff's "bare allegation that others were similarly situated is insufficient to

survive a motion to dismiss." *Jones*, 666 F. App'x at 94.  Plaintiff's equal protection claim,

brought pursuant to section 1983, must be dismissed.

While Plaintiff appears to set forth a selective enforcement claim, it would also fail as a

class of one claim.  In order to state a "class of one" equal protection claim, Plaintiff is required

to set forth facts plausibly showing that (1) she has been intentionally treated differently from

others similarly situated, and (2) there is no rational basis for the difference in

treatment. *See Village of Willowbrook*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060

(2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2000).  Plaintiff must

establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from

those of a comparator to a degree that would justify the differential treatment on the basis of a

legitimate government policy; and (ii) the similarity in circumstances and difference in

treatment are sufficient to exclude the possibility that the defendants acted on the basis of a

mistake." *Marino v. City Univ. of N.Y.,* 18 F. Supp. 3d 320, 340-41, 2014 U. S. Dist. LEXIS

64516, *46-47 (E. D. N. Y. May 9, 2014), *citing Fortress Bible Church v. Feiner*, 694 F.3d 208,

222 (2d Cir. 2012).  Plaintiff must allege an "extremely high" level of similarity with the person

to whom plaintiff is comparing herself. *Neilson*, 409 F.3d at 104. Moreover, the circumstances

must be "prima facie identical" to the other person. *Id.* at 105. Additionally, "[t]o prove a

violation of the Equal Protection Clause ... a plaintiff must demonstrate that he [or she] was

treated differently than others similarly situated as a result of intentional or purposeful

discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff has not met this

burden.

While Plaintiff has alleged that she was treated differently than her peers, she has not set

forth specific allegations to support her conclusory statements.  See *Rafano v. Patchogue-*

*Medford Sch. Dist*., 06-CV-5367, 2009 U.S. Dist. LEXIS 23731, 2009 WL 789440, at *6

(E.D.**N.Y.** Mar. 20, 2009)(Bianco, J.) (finding on summary judgment that plaintiff did not

"provide any other evidentiary support to his conclusory statement" that there was a high degree

of similarity between plaintiff and other disabled students). Plaintiff's speculative claims that

other students were similarly situated, but treated differently, does not give rise to a plausible

inference that "the similarity in circumstances and difference in treatment" between Plaintiff and

her classmates is "sufficient to *exclude the possibility* that the defendants acted on the basis of a

mistake." *Fortress Bible Church*, 694 F.3d at 222 (emphasis added).  Plaintiff has failed to

sufficiently state a claim for a violation of her rights under the Equal Protection Clause. Plaintiff

has not adequately alleged the extremely high degree of similarity between herself and her fellow

students to survive a motion to dismiss and her Equal Protection claim fails.

Having failed to allege an ongoing violation of Plaintiff's substantive due process,

procedural due process or equal protection rights under the Fourteenth Amendment, the Section

1983 claims against the Defendants in their official capacities fail to meet the *Ex Parte Young*

exception to Eleventh Amendment Immunity.  Therefore, those claims must be dismissed.

### 3.    Claims against Individual Defendants in their individual capacities for money damages must be dismissed on the grounds of qualified immunity.

As to the plaintiff's Section 1983 claims against the Defendants Hegedus, Prezant and

Faraclas, in their individual capacities for money damages, the doctrine of qualified immunity

shields them from suit.[8]  As set forth above, Plaintiff has failed to plead sufficient facts to

---

[8] A qualified immunity defense may be asserted on a Rule 12(b)(6) motion.  *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).

demonstrate a plausible violation of her rights under the United States Constitution or federal law. Therefore, qualified immunity shields the defendants from liability.

Qualified immunity is an immunity from suit, not simply from liability. *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017), citing *White v. Pauly*, ⸻ U.S. ⸻, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In determining whether a defendant is entitled to qualified immunity, the Court engages in a two-step analysis. The shield applies "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ganek*, 874 F.3d at 80–81, citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). "The two-step inquiry need not always be conducted sequentially; in short, a court may assume, without deciding, that the facts state a constitutional violation and, yet, grant qualified immunity on the ground that the right was not then clearly established." *Ganek*, 874 F.3d at 81. *See also Pearson v. Callahan*, 555 U.S. 223, 227, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009); *Zalaski v. City of Hartford*, 723 F.3d 382, 388–89 (2d Cir. 2013).

The first prong asks whether the plaintiff's allegations, if true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If a plaintiff cannot make the first showing, *i.e.*, a violation of constitutional rights, no further inquiry is necessary 'because where there is no viable constitutional claim, defendants have no need of an

immunity shield.'" *Ganek,* 874 F.3d at 81, *citing Zalaski*, 723 F.3d at 388. *See also Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

As set forth herein, Plaintiff has failed to allege sufficient facts to establish a constitutional violation of the plaintiffs' rights under the Fourteenth Amendment. Therefore, any claim against the individual defendants in their individual capacities should be dismissed.

Even if this court were to find that the plaintiffs had alleged sufficient facts to plausibly state a Fourteenth Amendment violation, the individual defendants are still protected by qualified immunity because the individual defendants acted as reasonable officials in considering Plaintiff's academic dismissal and are entitled to qualified immunity. The inquiry focuses on the "'objective legal reasonableness' of the official's acts, *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396, 'assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken,' *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1850, 198 L. Ed. 2d 290 (2017).

"'Even if the right at issue was clearly established *in certain respects*, ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue *in its particular factual context*.'" *Barboza v. D'Agata,* 676 F. App'x 9, 12 (2d Cir. 2017). "That determination is made not from the perspective of courts or lawyers, but from that of a reasonable [person] in the defendant's position." *Ganek,* 874 F.3d at 81, citing *Saucier,* 533 U.S. at 202. "The standard is deliberately 'forgiving,' in order to give public officials 'breathing room to make reasonable but mistaken judgments' without fear of disabling liability. Thus, as has often been observed, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ganek*, 874 F.3d at 81. (Internal citations and quotations omitted.)

In this case, no reasonable college official could have known that the careful and professional consideration of a student's academic status, and a decision to dismiss the student following such consideration, would violate the student's constitutional rights. The Defendants were making decisions against a backdrop of fundamental and consequential legal doctrines. No reasonable person would have known that actions taken to dismiss a student from an academic program, based on careful consideration and review by professional educators, would be construed as violating clearly established statutory or constitutional rights. To the contrary, the decision to dismiss Plaintiff was made with the reasonable belief that it was both legally permissible and necessary given the academic criteria of the university.

Accordingly, qualified immunity shields Defendants Hegedus, Prezant and Faraclas, in their individual capacities, from the plaintiffs' Section 1983 claims and the court should dismiss those counts.

> **4.     Having failed to allege any facts to support the personal involvement of Defendant Bertolini, any claims against him in his individual capacity must be dismissed.**

A plaintiff must allege personal involvement in the alleged constitutional violation in order to state a valid Section 1983 claim for money damages against a state official in her individual capacity. In this case, Plaintiff has failed to allege facts to demonstrate that Defendant Bertolini was personally involved in actions which allegedly deprived Plaintiff of her constitutional rights. Therefore, the Section 1983 claim for money damages against Defendant Bertolini in his individual capacity must be dismissed.

Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected', the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). Thus, an allegation of the

defendant's personal involvement in the alleged constitutional deprivation is a necessary prerequisite for a valid cause of action under Section 1983. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). Personal involvement necessary to impose individual liability includes situations where the individual: "(1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated." *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir. 2007). Ultimately, a public official can only be liable if the official causes the harm. *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Thus, the plaintiff must establish a tangible connection between the acts of the defendant and the injuries suffered. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be held liable under Section 1983 under the doctrine of <u>respondent</u> <u>superior</u>. *See Monell v. Dep't of Social Servs*., 436 U.S. 658, 694 n.58, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); personal involvement of the supervisor is required. *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980). "The personal involvement and liability of supervisory personnel is established when the supervisory official has 'actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.'" *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584-85 (S.D.N.Y. 2009) (Cote, D.J.), *citing Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (citation omitted), and *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999).

The Amended Complaint does not include a single factual allegation regarding Defendant Bertolini's personal involvement, as supervisor or otherwise, in any of the incidents described. Thus the allegations are insufficient to plead a claim against a supervisor under Section 1983. Given that Plaintiff have failed to allege any personal involvement by Defendant Bertolini, she have failed to state a valid Section 1983 claim. Therefore, the Section 1983 claim against Defendant Bertolini must be dismissed.

> **5.      Claims against the Individual Defendants must be dismissed because Plaintiff does not allege that any Individual Defendant has the authority to reinstate her as a student in the Program.**

All claims against the Individual Defendants cannot proceed because there are no facts to support a claim that any one of them has the power or authority to implement the relief requested. *See Shipman v. New York State Office of Persons with Developmental Disabilities*, No. 11 CIV. 2780 GBD FM, 2012 U.S. Dist. LEXIS 46278, 2012 WL 1034903, at *3 (S.D.N.Y. Mar. 26, 2012) (granting 12(b)(6) motion to dismiss because, *inter alia*, "plaintiff cannot proceed on his request for reinstatement because he has failed to allege that any individual defendant has the authority to reinstate plaintiff.") (citing *Perciballi v. New York*, No. 09 Civ. 6933(WHP), 2010 U.S. Dist. LEXIS 107835, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 29, 2010)). *See also Doherty v. Bice*, 2020 U.S. Dist. LEXIS 169545, *23-24, 2020 WL 5548790. Here, Plaintiff does not specifically allege that any one of the Individual Defendants has the authority to effectuate any of the injunctive relief requested. Accordingly, Plaintiff's claims for injunctive relief against each of the Individual Defendants must be dismissed.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should dismiss the Amended Complaint.

Respectfully submitted,

DEFENDANTS


WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/ Mary K. Lenehan
       Mary K. Lenehan
       Assistant Attorney General
       Federal Bar No. ct15436
       165 Capitol Avenue
       Hartford, CT  06106
       Tel:  (860) 808-5210
       Fax: (860) 808-5385
       Email:  mary.lenehan@ct.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2021, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ Mary K. Lenehan
Mary K. Lenehan
Assistant Attorney General