## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PUCCINELLI, | ) | 3:21-CV-00763 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN CONNECTICUT STATE | ) | |
| UNIVERSITY, JOE BERTOLINI, | ) | October 11, 2022 |
| STEPHEN HEGEDUS, KARA | ) | |
| FARACLAS, and ROBERT PREZANT, | ) | |
| *Defendants*. | ) | |

## <u>RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

Plaintiff Angela Puccinelli has brought this action against Defendant Southern Connecticut State University ("SCSU"), and Defendants Joe Bertolini, Stephen Hegedus, Robert Prezant, and Kara Faraclas (the "Individual Defendants," and collectively with SCSU, "Defendants"), alleging that Defendants violated her rights by discriminating against her on the basis of her disability and retaliating against her when she was a student at SCSU. Plaintiff's amended complaint consists of eight claims. Plaintiff asserts her first three claims against all Defendants pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection under the law. Plaintiff brings her remaining claims against SCSU only, alleging: disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; disability discrimination and wrongful discharge in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12182; violation of the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. § 46a-75; pregnancy discrimination in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(b)(7); and retaliation in violation of the CFEPA, Conn. Gen. Stat. § 46a-75.

Defendants seeks to dismiss Plaintiff's amended complaint, arguing that the Court lacks subject matter jurisdiction over certain claims because Defendants are immune from suit and that Plaintiff has also failed to state any claims upon which relief can be granted.  In response to Defendants' motion to dismiss, Plaintiff withdrew her § 1983 claims against SCSU.  Plaintiff seeks to maintain her other claims, however, arguing that Defendants are not immune from suit and that she has stated claims upon which relief can be granted.

For the reasons described below, the Court agrees with Defendants that all counts of the amended complaint must be dismissed because several claims are barred by sovereign immunity and because Plaintiff has failed to state a claim upon which relief can be granted with respect to any remaining claims.  The amended complaint is thus DISMISSED in full without prejudice to refiling.

## I.        FACTUAL BACKGROUND

Plaintiff's amended complaint alleges the following facts, which the Court takes as true for purposes of Defendants' motion to dismiss.[1]  Plaintiff, who asserts that she is disabled because she suffers from post-traumatic stress disorder ("PTSD") and anxiety resulting from a history of trauma and an upbringing in the foster care system, was formerly enrolled in SCSU's Special Education Teaching Program (the "Program").  Am. Compl., ECF No. 2, ¶¶ 2, 22.  As a student in the Program, Plaintiff was seeking a bachelor's degree in kindergarten through twelfth grade Special Education and a Comprehensive Special Education Teaching Certification, so that she could pursue a career working with special education students.  *Id.*  ¶¶ 2, 22.  During her time in

---

[1] Where a defendant moves to dismiss under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

the Program, Plaintiff sought accommodations from SCSU to address anxiety she experienced in certain academic settings. *Id.* ¶ 23.

Plaintiff asserts that, throughout her time at SCSU, she experienced discrimination and retaliation, was denied the protection of SCSU's policies and procedures, and was held to a higher standard than her non-disabled peers. *Id.* ¶ 25. Specifically, Plaintiff alleges that SCSU and its faculty and staff discriminated and retaliated against her in the following ways. First, in January of 2019, when Plaintiff approached an SCSU professor to resolve confusion related to a clerical error on a course website and to discuss the concepts of the course curriculum, the professor became angry at Plaintiff and, using profanity, told Plaintiff that she was not fit to be a teacher and should reconsider her degree. *Id.* ¶¶ 26–27. Despite Plaintiff reporting this incident to the Associate Dean of SCSU's School of Education and the Chair of SCSU's Curriculum and Learning Department, SCSU failed to take meaningful action. *Id.* ¶ 28. Then, in or around May of 2019, Plaintiff reported that students were bullying her based on her disability, but SCSU again failed to take meaningful action in response to Plaintiff's concerns. *Id.* ¶ 29. Throughout the spring and summer of 2019, Plaintiff experienced an increase in her anxiety due to various stressors in her life. *Id.* ¶ 30. As a result, Plaintiff sought support from SCSU's Disability Resource Center and contacted several SCSU faculty and staff to seek accommodations. *Id.*

As her final requirement to complete the Program and receive her initial teaching certification, Plaintiff was scheduled to take part in a student teaching placement in the fall of 2019. *See id.* ¶¶ 4, 31, 32. In July of 2019, Defendant Hegedus, Dean of SCSU's College of Education, sent a letter to Plaintiff conveying his decision that she would not be permitted to complete the student teaching program based on her request for accommodations and due to certain unspecified "recent incidents." *Id.* ¶¶ 9, 31. Plaintiff describes this decision as a "unilateral[]"

3

decision on the part of Hegedus that constituted a form of "discipline." *Id.* ¶¶ 31, 33. Plaintiff voiced concerns regarding Hegedus's decision to her advisor, who set up a meeting with Hegedus to discuss the letter he had sent to Plaintiff. *Id.* ¶¶ 34–36.

Plaintiff met with her advisor and Hegedus in late July of 2019. *Id.* ¶¶ 36–37. At the conclusion of the meeting, Hegedus allowed Plaintiff to proceed with her fall student teaching placement, but he expressed concerns about whether Plaintiff could be successful in light of her anxiety. *Id.* ¶¶ 38–39, 48. Plaintiff was also told that, if a negative situation were to arise, she might be removed from her student teaching placement and that it was unlikely that SCSU would secure a new placement for her. *Id.* ¶ 39. In addition, Hegedus indicated that Defendants would increase their supervision of Plaintiff during her student teaching placement. *Id.* ¶ 40. Plaintiff asserts that the decisions made during this meeting—as well as the initial decision, conveyed in Hegedus's letter, to remove her from the Program—were based primarily on Plaintiff's difficulty communicating via email and that, as a result, Defendants agreed to have in-person communications with Plaintiff during her student teaching placement. *Id.* ¶ 41. Plaintiff further asserts that the decisions constituted changes to the requirements for completing her student teaching experience, and that SCSU was required to provide Plaintiff with due process before changing these requirements. *Id.* ¶¶ 43, 47.

In August of 2019, Plaintiff began her student teaching placement at Moran Middle School. *Id.* ¶¶ 4, 50. At the time Plaintiff began her student teaching placement, she had earned a 3.95 grade point average, achieved high honors at SCSU, and had previously successfully completed one student teaching placement at a different school. *Id.* ¶¶ 3–4, 24, 44–46. Plaintiff was scheduled to complete the Program at the end of 2019. *Id.* ¶ 4. After Plaintiff's first week of student teaching, the cooperating teacher supervising Plaintiff provided her with positive feedback

and told her that she would likely find a job quickly.  *Id.* ¶ 53.  Plaintiff shared this positive feedback with her advisor at SCSU.  *Id.* ¶ 54.  Early in her student teaching placement, Plaintiff also discussed her disabilities and history of trauma with her cooperating teacher, *id.* ¶ 56, and the cooperating teacher noticed that Plaintiff had scars on her arms from her history of cutting, *id.* ¶¶ 5, 57–58.  The cooperating teacher thereafter instructed Plaintiff not to work with a particular student, who also had a history of trauma and cutting.  *Id.* ¶¶ 5, 58, 60.  Plaintiff, who asserts that the cooperating teacher's direction discriminated against her and violated the student's rights under the Individuals with Disabilities Education Act (the "IDEA"), raised concerns about the direction to the cooperating teacher.  *Id.* ¶¶ 5, 65, 68, 70.  In response, Plaintiff's cooperating teacher was frustrated and combative and refused to provide Plaintiff with any further explanation.  *Id.* ¶ 64.

On September 13, 2019, Plaintiff's advisor informed her that there had been a change to Plaintiff's student teaching schedule and that Plaintiff would need to meet with a team of SCSU personnel.  *Id.* ¶ 66.  Upon receiving this information, Plaintiff emailed Defendant Faraclas, Chair of SCSU's Special Education Department, expressing concerns about issues related to her student teaching placement.  *Id.* ¶ 68.  Plaintiff received no immediate response from Faraclas.  *Id.*  Plaintiff thereafter made multiple attempts to contact SCSU faculty to seek guidance regarding her placement and how to ensure she satisfied the requirements for completing the Program.  *Id.* ¶ 70.  Plaintiff grew increasingly anxious and frustrated when she did not receive a meaningful response.  *Id.* ¶ 71.  Plaintiff claims that, through this sequence of events, Defendants violated Hegedus's promise to have in-person communications with Plaintiff throughout her student teaching placement.  *Id.*  Plaintiff further claims that Defendants had notice that their failure to communicate with her in-person would increase her anxiety.  *Id.*

Plaintiff subsequently sought an in-person meeting with Faraclas, which was scheduled to take place on September 16, 2019. *Id.* ¶ 72. Faraclas, however, canceled the meeting and informed Plaintiff that SCSU had received an update from Moran Middle School that required a higher level of review within SCSU's School of Education. *Id.* ¶ 73. Faraclas did not provide Plaintiff with any further information about the issues raised by Moran Middle School, the next steps Plaintiff would face, or the potential that Plaintiff would be expelled from the Program. *Id.* ¶ 74. Instead, Faraclas referred Plaintiff to the "Scaffolding for Success" policy in Plaintiff's Student Teaching handbook. *Id.*

Plaintiff alleges that, when disciplining a student or removing a student from the School of Education, SCSU must comply with certain requirements set forth in a university policy titled "Academic Standards; Teaching Certification Program." *Id.* ¶ 76. One of these requirements is that, when a student fails to meet certain standards in the Program, the student must be provided with a "Scaffolding Success Action Plan," or "SSAP." *Id.* ¶¶ 76–77. The first step of this process involves a "Level One" scaffolding meeting, where a student meets with the "Program Review Committee," which then decides whether an SSAP is required and, if so, drafts the SSAP. *Id.* ¶ 79. SCSU personnel held a meeting with Plaintiff, which purportedly constituted a Level One meeting, on September 20, 2019. *Id.* ¶ 80. During the meeting, Plaintiff was informed that her student teaching placement would be discontinued because she did not follow her cooperating teacher's direction that she should not work with the student who had a history of trauma and cutting and because she did not take direction well. *Id.* ¶ 81. Plaintiff claims that, by discontinuing her student teaching placement, SCSU effectively expelled her from the Program without following the proper procedures for doing so. *Id.* ¶¶ 83–84. Specifically, Plaintiff claims that SCSU violated its own procedures by, among other things, failing to provide Plaintiff with proper

notice of the Level One meeting and failing to provide Plaintiff with information about the claims against her. *Id.* ¶ 84.

According to Plaintiff, the SSAP procedures also require SCSU to convene a Level Two scaffolding meeting with the School of Education Review Committee (the "SoERC"), which considers, among other things, whether dismissal from the Program is necessary. *Id.* ¶ 87. If the SoERC determines that dismissal is necessary, the student will receive a letter from the Associate Dean of the School of Education regarding the dismissal. *Id.* Plaintiff attended a Level Two meeting by phone on November 22, 2019, during which she advocated for her rights as a person with a disability and disclosed that she was pregnant. *Id.* ¶¶ 88–89. The meeting attendees discussed the possibility that Plaintiff might be able to participate in a student teaching placement in the spring, but SCSU personnel also stated that Plaintiff's mental health and status as a pregnant woman could be detrimental.[2] *Id.* ¶ 89. As a result, SCSU personnel suggested that Plaintiff take a few years off before completing her degree. *Id.*

After Plaintiff's Level Two meeting, SCSU prepared a decision letter communicating that the decision had been made to dismiss Plaintiff from the Program, but failed to send this letter to Plaintiff. *Id.* ¶ 90. Because Plaintiff was not initially provided with the decision letter, she was unaware that she had a right to appeal her dismissal to Defendant Prezant, SCSU's Provost and Vice President for Academic Affairs, until after the deadline for doing so had passed. *Id.* ¶ 91. Plaintiff requested an extension of the appeal deadline, which Prezant granted, and she submitted her appeal on December 17, 2019. *Id.* ¶ 92. On January 2, 2020, Prezant issued a final decision dismissing Plaintiff from the Program. *Id.* ¶ 93.

---

[2] Plaintiff has asserted a claim for pregnancy discrimination under only state, but not federal, law.

After formally dismissing Plaintiff from the Program, Defendants suggested that Plaintiff remain enrolled at SCSU to complete a bachelor's degree in general studies with a concentration in Social and Community Service.  *Id.* ¶ 94.  Plaintiff claims that her removal from the Program effectively ended her teaching career and rendered meaningless the time and tuition payments she had invested in her education.  *Id.* ¶ 6; *see id.* ¶ 94.

Plaintiff further alleges that, following her dismissal from the Program, SCSU faculty and staff would only communicate with her via email, despite knowing that email communication and their lack of response to Plaintiff would increase her anxiety.  *Id.* ¶ 96.  Plaintiff also alleges that, between January and May of 2020, she experienced increasing financial hardships due to SCSU's discrimination and retaliation.  *Id.* ¶ 97.  For example, in April of 2020, the Veterans Administration requested reimbursement of the scholarship it had previously provided to Plaintiff because she had been expelled from the Program.  *Id.* ¶ 98.

In addition, Plaintiff asserts that Defendants provided preferential treatment to non-disabled students in the Program, including by:  allowing students to complete the Program despite committing violations of SCSU policies such as drinking excessively on a school sponsored trip and bullying other students; allowing one student to complete the Program despite a disagreement with his cooperating teacher; and allowing all students except Plaintiff to satisfy the Program's student teaching requirement in the spring of 2020, during the COVID pandemic, by submitting a portfolio in lieu of in-class teaching.  *Id.* ¶ 99.

Plaintiff initiated this action in June of 2021, claiming that Defendants committed various violations of federal and state law.  ECF Nos. 1, 2.  In addition to the defendants discussed in this section, Plaintiff also asserts claims against Defendant Bertolini, President of SCSU.  *See id.* ¶ 8. Defendants responded to Plaintiff's amended complaint by filing their motion to dismiss, ECF No.

17, and by moving to stay discovery pending the Court's ruling on the motion to dismiss, ECF No.

20.   The case was then transferred to the undersigned, ECF No. 22, and the Court granted

Defendants' motion to stay discovery, ECF No. 30.   The Court held oral argument on Defendants'

motion to dismiss.   *See* ECF No. 32.

## II.   LEGAL STANDARDS GOVERNING DISMISSAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

### A.   Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants may move to dismiss a

case for lack of subject matter jurisdiction.   A case is properly dismissed for lack of subject matter

jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power

to adjudicate it."   *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   Because the

Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v.*

*Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under

the Eleventh Amendment is properly brought under Rule 12(b)(1), *Long Island Pure Water Ltd.*

*v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[3]

Although it is usually the plaintiff's burden to prove subject matter jurisdiction, "where a

defendant official or governmental entity asserts the Eleventh Amendment as the basis of [a]

12(b)(1) motion, the burden falls to that entity" to establish that it is an arm of the state such that

it may be entitled to sovereign immunity.   *See Perez v. Conn. Dep't of Corr. Parole Div.*, No. 3:13-

CV-150 JCH, 2013 WL 4760955, at *2 (D. Conn. Sept. 4, 2013) (citing *Woods v. Rondout Valley*

---

[3] Neither the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is "more appropriately viewed as an affirmative defense." *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020).   *See also Aldridge v. Lamont*, No. 3:20-cv-924 (KAD), 2020 WL 7773415, at *4 n.6 (D. Conn. Dec. 30, 2020).   While the Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court, it need not and does not decide this question here.   Regardless of which view of the Eleventh Amendment applies, certain of Plaintiff's claims are barred under it.

*Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)). Still, consistent with a plaintiff's ultimate burden of establishing subject matter jurisdiction, once an entity has shown that it is an arm of the state, the plaintiff bears the burden of establishing that an exception to sovereign immunity applies. *See MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 497–98 (S.D.N.Y.), *aff'd*, 719 F. App'x 47 (2d Cir. 2017) ("The ultimate 'burden of proving subject matter jurisdiction by a preponderance of the evidence' lies with the plaintiff.") (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). Here, the parties do not dispute that SCSU is an arm of the state. Accordingly, in discussing whether sovereign immunity applies to Plaintiff's claims, the Court will examine whether Plaintiff has met her burden of proving that any exception to sovereign immunity applies.

### B.  Federal Rule of Civil Procedure 12(b)(6)

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

### III.    COUNTS ONE THROUGH THREE:  SECTION 1983 CLAIMS

Plaintiff asserts Counts One through Three pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection.  In response to Defendants' motion to dismiss, Plaintiff has withdrawn these claims to the extent they were alleged against SCSU.

These counts therefore remain only as alleged against Defendant Bertolini in his official capacity, as well as Defendants Hegedus, Faraclas, and Prezant, in their individual and official capacities.  To the extent these counts are asserted against the Individual Defendants in their official capacities, Plaintiff's claims are barred by sovereign immunity.  To the extent these counts are asserted against the Individual Defendants in their individual capacities, Plaintiff has failed to state claims upon which relief can be granted.  Accordingly, Counts One through Three are dismissed in full.

A.  <u>Claims Against the Individual Defendants in their Official Capacities</u>

### 1.  *Claims for Damages*

Plaintiff's claims for damages against the Individual Defendants in their official capacities must be dismissed because they are barred by sovereign immunity.  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  This bar applies where state officials are sued for damages in their official capacities because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Id.*  Therefore, "[a]bsent a waiver of Eleventh Amendment immunity, the Eleventh Amendment bars claims for damages brought against state employees sued in their official capacities when the state is the real party in interest." *Mulero v. Blumenthal*, No. 3:10CV1328 WWE, 2011 WL 1194401, at *1 (D. Conn. Mar. 28, 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).  Here, Plaintiff has made no argument that the State of Connecticut has waived sovereign immunity with respect to the claims in Counts One through Three, or that there has been a clear congressional override of such immunity.  Accordingly, to the extent Counts One through Three constitute claims for damages against the Individual Defendants in their official capacities, such claims are dismissed as barred by sovereign immunity.

### 2.  *Claims for Declaratory and Injunctive Relief*

Plaintiff's claims for declaratory and injunctive relief against the Individual Defendants must likewise be dismissed on sovereign immunity grounds.  Pursuant to the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff suing for declaratory or injunctive relief may, under limited circumstances, "avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities." *In re Deposit Ins. Agency*, 482

F.3d 612, 618 (2d Cir. 2007); *see Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475–76 (2d Cir. 2019) (discussing *Ex parte Young* with respect to both declaratory and injunctive relief). In determining whether the *Ex parte Young* doctrine applies, a court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Plaintiff seeks both a declaration that Defendants have violated her rights and injunctive relief, including in the form of reinstatement to the Program. Am. Compl. at 27. With respect to her request for declaratory relief, Plaintiff requests that the Court declare that "Defendants' practices violated . . . Plaintiff's rights under the Fourteenth Amendment to the United States Constitution as guaranteed pursuant to 42 U.S.C. § 1983." *Id.* Notably, "[a] declaration that a violation of federal law occurred in the past" is "entirely retroactive" and "does not mandate compliance with federal law *in the future* as required by *Ex parte Young*." *T.W. v. N.Y. State Bd. of L. Exam'rs*, No. 16CV3029RJDMMH, 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022). Plaintiff's request for a declaration that Defendants' past practices violated federal law is squarely retrospective and, therefore, cannot fall within the *Ex parte Young* exception allowing prospective relief.

The Court acknowledges that reinstatement, including reinstatement as a student at a state university, has been characterized as prospective relief not barred by the Eleventh Amendment. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 97 (2d Cir. 2007); *Rives v. SUNY Downstate Coll. of Med.*, No. 20-CV-621 (RPK) (LB), 2022 WL 4646820, at *6 (E.D.N.Y. Sept. 30, 2022). But such prospective relief is available only if a plaintiff sufficiently alleges an ongoing violation of federal law. Here, as explained below, Plaintiff has not sufficiently alleged

any violation of federal law, much less an ongoing one.   Therefore, Plaintiff's requests for declaratory and injunctive relief under Counts One through Three do not fall within the *Ex parte Young* exception to sovereign immunity.   These claims are thus dismissed.[4]

B.   <u>Claims Against Individual Defendants in Their Individual Capacities</u>

1.   *Claims for Declaratory and Injunctive Relief*

Plaintiff's claims for declaratory and injunctive relief against the Individual Defendants in their individual capacities must be dismissed for failure to state a claim upon which relief can be granted.   When plaintiffs assert § 1983 claims against state officials for declaratory and injunctive relief, such claims may only proceed to the extent the state officials are sued in their official capacities.   *See Rosquist v. N.Y. Univ. Med. Ctr.*, No. 97 CIV. 8566 JGK, 1998 WL 702295, at *15 (S.D.N.Y. Oct. 7, 1998), *aff'd*, 199 F.3d 1323 (2d Cir. 1999) (state officials are "amenable to suit under § 1983 in their official capacities only for prospective declaratory and injunctive relief"); *Jumpp v. Simonow*, No. 3:20CV138 (KAD), 2020 WL 4059850, at *1 (D. Conn. July 20, 2020) (noting that "a plaintiff may only seek injunctive relief under Section 1983 against a defendant sued in his or her official capacity").   Thus, to the extent Counts One through Three constitute claims for injunctive and declaratory relief against the Individual Defendants in their individual capacities, the Court cannot grant Plaintiff the remedy she seeks.   *See Ziemba v. Armstrong*, No. 3:02CV2216 (DJS)(TPS), 2004 WL 1737447, at *2 (D. Conn. July 30, 2004) ("Injunctive relief may only be recovered from parties in their official capacities.").   Accordingly, such claims are dismissed for failure to state a claim upon which relief can be granted.

---

[4] Defendants also argue that Plaintiff's claims for injunctive relief against the Individual Defendants must fail because none of the Individual Defendants have the ability to reinstate Plaintiff in the Program.   ECF No. 19 at 40.   Because the Court dismisses Plaintiff's requests for injunctive relief on sovereign immunity grounds, the Court does not reach this argument.

## 2. Claims for Damages

To the extent Counts One through Three seek damages from the Individual Defendants in their individual capacities for alleged violations of Plaintiff's substantive due process, procedural due process, and equal protection rights, Defendants argue that these counts should be dismissed both because Plaintiff has failed to state any claims upon which relief can be granted and because the Individual Defendants are entitled to qualified immunity. The Court agrees with Defendants that Plaintiff has failed to state any claims upon which relief can be granted in Counts One through Three and therefore dismisses these counts on this ground. As a result, the Court does not reach Defendants' qualified immunity arguments.[5]

### a. Count One: Substantive Due Process

In Count One, Plaintiff asserts that Defendants violated her substantive due process rights when they removed her from the Program. Substantive due process rights arising under the Fourteenth Amendment "safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021). To allege

---

[5] The Second Circuit has explained that, although "[u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted," the defense may be asserted on a Rule 12(b)(6) motion where "the complaint itself establishe[s] the circumstances required as a predicate to a finding of qualified immunity." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (first and second alterations in original) (emphasis omitted). Where a plaintiff has failed to state a claim upon which relief can be granted, district courts have commonly declined to reach the question of whether a defendant is entitled to qualified immunity. *See, e.g.*, *Moore v. City of New York*, No. 08CIV.8879(PGG), 2010 WL 742981, at *5 n.3 (S.D.N.Y. Mar. 2, 2010) (declining to reach the issue of whether individual defendants were entitled to qualified immunity because the court found that the plaintiff had failed to state a claim); *Ward v. Capra*, No. 16-CV-6533 (KMK), 2018 WL 1578398, at *6 n.8 (S.D.N.Y. Mar. 29, 2018) (same); *Blandon v. Capra*, No. 17-CV-65 (KMK), 2017 WL 5624276, at *12 n.19 (S.D.N.Y. Nov. 20, 2017) (same); *but see Franza v. Stanford*, No. 18-CV-10892 (KMK), 2019 WL 6729258, at *7–8 (S.D.N.Y. Dec. 11, 2019) (where defendants argued both that the plaintiff had failed to state a claim and that the defendants were entitled to qualified immunity, granting dismissal on qualified immunity grounds and dismissing with prejudice and without allowing the plaintiff the opportunity to amend). Here, because the Court finds that Plaintiff has failed to state a claim, it does not reach the question of whether the Individual Defendants are entitled to qualified immunity. If Plaintiff chooses to amend her complaint and to reassert her claims against the Individual Defendants, Defendants may renew their qualified immunity arguments at that time.

a violation of substantive due process against a state actor, "a plaintiff must allege a deprivation of a fundamental liberty interest, or a valid property interest in a constitutionally-protected benefit." *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021), *aff'd sub nom. Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022). In other words, "rights are only protected by substantive due process if they are fundamental or 'implicit in the concept of ordered liberty.'" *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 338 (E.D.N.Y. 2014). Thus, in examining substantive due process claims, the Court must first "identify the constitutional right at stake." *Hurd*, 984 F.3d at 1087. After identifying the constitutional right at stake, the Court must determine whether the plaintiff has demonstrated state action that was "so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd*, 984 F.3d at 1087; *see Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (same). Notably, substantive due process "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011).

Plaintiff claims that there are two rights at stake with respect to her substantive due process claim: her property right in continuing her education and her liberty interest in pursuing a career as a teacher. For the reasons below, Plaintiff has failed to state a substantive due process claim with respect to either of these purported rights. Therefore, Count One is dismissed in full.

First, Plaintiff's property interest in continuing her higher education is not a right protected by substantive due process. At the outset, the Second Circuit has held that "simple, state-law contractual rights, without more," are not "worthy of substantive due process protection." *Loc. 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994). Thus, to the extent Plaintiff's substantive due process claim is

based merely on a state-law contractual right to pursue her education, it must be dismissed.  *See Marino*, 18 F. Supp. at 339 ("[T]he property right granted to Plaintiff as a public school student under New York law is a sufficient interest for a procedural Due Process claim, but does not hold weight as a fundamental right under the Fourteenth Amendment.").  Plaintiff claims that her property interest in continuing her education is not merely a matter of contract law, but is also protected by several independent sources, including the Connecticut State Board of Education's approval of SCSU's professional education certification and licensure programs.  The Court acknowledges that "state-created rights that trigger core constitutional interests" are entitled to substantive due process protection, *Hurd*, 984 F.3d at 1088, and that students "generally have a 'legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause,'" *Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at \*9 (S.D.N.Y. Mar. 7, 2022).  The right to public education, however, "is not fundamental" and, as a result, it is not protected by substantive due process.  *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012).  Accordingly, to the extent Count One is based on Plaintiff's purported right to continue her education, it must be dismissed for failure to state a claim.

Second, Plaintiff fails to state a substantive due process claim with respect to her liberty interest in pursuing her chosen career.  "While a person's right to pursue the profession of [her] choice is recognized as a constitutionally protected liberty interest, courts in the Second Circuit have consistently held one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest."  *Marino*, 18 F. Supp. 3d at 339 (collecting cases); *see Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999), *aff'd*, 225 F.3d 646 (2d Cir. 2000) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.").  Here, while Defendants may have made it

17

more difficult for Plaintiff to pursue her chosen career, Plaintiff has failed to plausibly allege that Defendants prohibited her from pursuing her career in teaching altogether. *See Marino*, 18 F. Supp. 3d at 339–40 (dismissing substantive due process claim, even though it was "undeniable that Defendants' actions made it more difficult for Plaintiff to attain her goal" of practicing in her chosen profession). To the contrary, Plaintiff alleges that SCSU personnel discussed the possibility of allowing her to participate in another student teaching placement and suggested that she complete her degree after taking a few years off. Am. Compl. ¶ 89; *see also id.* ¶ 94 (SCSU suggested Plaintiff could remain enrolled and complete a bachelor's degree in general studies with a concentration in Social and Community Service). Plaintiff has therefore failed to allege a cognizable liberty interest for substantive due process purposes.

Based on the foregoing, Plaintiff's substantive due process claim in Count One is dismissed in full pursuant to Rule 12(b)(6).

*b.*    Count Two:  Procedural Due Process

Next, Plaintiff has failed to state a procedural due process claim in Count Two. Procedural due process claims "concern the adequacy of the procedures provided by [a] governmental body for the protection of liberty or property rights of an individual." *Gordon v. Nicoletti*, 84 F. Supp. 2d 304, 308 (D. Conn. 2000). A plaintiff states a procedural due process claim under the Fourteenth Amendment by plausibly alleging that "(1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Bellin v. Zucker*, No. 20-1463, 2021 WL 3197020 (2d Cir. July 29, 2021). Notably, "[t]he understandings that give rise to a property interest are generally grounded outside the Constitution, most often in state law." *Karan v. Adams*, 807 F. Supp. 900, 908 (D. Conn. 1992) (citing *Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 577

(1972)).  Still, "it is federal constitutional law that determines whether a particular property interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *Id.*

Courts have recognized a student's "liberty" or "property" interest in their dealings with a state-run university.  *See Marino*, 18 F. Supp. at 337 (recognizing student's property or liberty interest in dealings with public college under New York law).  There is, however, "no property interest in any particular type of education program"; rather, there in only "an interest in not being excluded from the entire educational process."  *Donohue*, 2022 WL 673636, at *9 (internal quotation marks and citations omitted).  Moreover, the type of process required varies depending on whether an adverse decision in the university setting was made for disciplinary or academic reasons.  While a student is entitled to some form of hearing before being suspended or expelled for disciplinary reasons, *see Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978), the Supreme Court "has been clear that there is no mandatory set of formal procedures required for challenging academic decisions," *Marino*, 18 F. Supp. 3d at 337 (citing *Horowitz*, 435 U.S. at 89–90).  Accordingly, "[w]hen judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment."  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).  "The deference given to academic institutions is amplified at the highest levels of education as the 'instruction becomes both more individualized and more specialized.'"  *Marino*, 18 F. Supp. 3d at 337–38 (citing *Horowitz*, 435 U.S. at 90).

In light of the foregoing principles, Plaintiff has failed to state a procedural due process claim.  At the outset, Plaintiff was not excluded from the entire education process, but was rather provided the opportunity to remain enrolled at SCSU to complete a bachelor's degree in general studies with a concentration in Social and Community Service.  Am. Compl. ¶ 94.  Thus, because

she had no property interest in remaining in her specific teaching program, Plaintiff's claim cannot survive to the extent she attempts to allege a deprivation of that property interest.

Moreover, Plaintiff has failed to plausibly allege that the process she was provided when she was removed from the Program was constitutionally inadequate.  As a preliminary matter, while the amended complaint refers generally to SCSU's "discipline" of Plaintiff, *see, e.g.*, Am. Compl. ¶ 122, Plaintiff does not expressly assert that the decision to remove her from the Program was disciplinary, as opposed to academic.[6]  Instead, Plaintiff argues vaguely that she is entitled to discovery on this issue.  ECF No. 25 at 34.

In any event, whether the decision to remove Plaintiff from the Program should be considered academic or disciplinary, an issue the Court does not decide today, Plaintiff has failed to plausibly allege a procedural due process claim.  Importantly, "[e]ven in the context of a school disciplinary proceeding," the Supreme Court has "stopped short of requiring a *formal* hearing." *Horowitz*, 435 U.S. at 89.  Here, Plaintiff claims that SCSU violated its own procedures by, among other things, depriving her of notice and a fair opportunity to be heard and failing to provide Plaintiff with written decisions.  *Id.* ¶ 116.  The amended complaint also alleges, however, that SCSU afforded Plaintiff the opportunity to be heard at multiple meetings, that Plaintiff did eventually receive a written decision regarding her removal from the Program, and that SCSU allowed her to appeal that decision.  *Id.* ¶¶ 91–92.  Although Plaintiff strenuously argues that Defendants violated SCSU's *own* policies, Plaintiff has failed to provide any support for the proposition that the process she received fell short of what the Constitution requires.  *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (before being suspended for disciplinary reasons, student must "be given oral or written notice of the charges against him and, if he denies them, an explanation

---

[6] At oral argument on the present motion, Plaintiff argued that she did not know whether the dismissal decision was disciplinary or academic.

of the evidence the authorities have and an opportunity to present his side of the story"); *see also Marino*, 18 F. Supp. at 338 (dismissing college student's procedural due process claim where student "was given two formalized proceedings in which she was able to present her case to appellate committees" (cleaned up)).  Thus, even drawing all inferences in favor of Plaintiff, the amended complaint fails to plausibly allege that the Individual Defendants did not provide Plaintiff with the procedural safeguards that the Constitution requires.

Accordingly, Count Two is dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

*c.*   Count Three:  Equal Protection

Plaintiff has also failed to state an equal protection claim in Count Three.  The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "In evaluating an equal protection claim, the Court must first determine the appropriate level of scrutiny to apply.  Unless state action burdens a suspect class or impinges upon a fundamental right, that action is subject to rational basis review."  *Marino*, 18 F. Supp. 3d at 340.  "Persons with disabilities are not a suspect class and review of their equal protection claims [is] subject to rational basis review."  *Id.*   Under rational basis review, the Court must "uphold the state action 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  *Id.* (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993)).  Here, Plaintiff brings Count Three under both the "class-of-one" and "selective enforcement" theories for asserting equal protection violations.  The Court will address each theory in turn.

First, Plaintiff has failed to state an equal protection claim as a class-of-one plaintiff.  A class-of-one equal protection claim arises "when a plaintiff is 'intentionally treated differently

from others similarly situated and . . . there is no rational basis for the difference in treatment.'" *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 316 (D. Conn. 2015), *aff'd sub nom. Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016) (alteration in original) (quoting *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012)).  This type of equal protection claim is typically pursued by a plaintiff who has not been subjected to discrimination based on membership in an identifiable class, but who alleges that she has been irrationally singled out by governmental action.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000); *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).

To prevail on her claim as a class-of-one plaintiff, Plaintiff must show that:  (1) "she has been intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment."  *Marino*, 18 F. Supp. 3d at 340.  Plaintiff's burden "is a tall one and she must show an extremely high degree of similarity between herself and her fellow students."  *Id.*  Here, the amended complaint includes only conclusory allegations regarding those similarly situated to Plaintiff, such as that Defendants "allow[ed] non-disabled students the protections set forth in SCSU's Policies and Procedures."  Am. Compl. ¶ 123; *see id.* ¶ 99 (describing ways in which Defendants "provided preferential treatment to Plaintiff's non-disabled peers" in the Program).  These allegations clearly do not suffice to show an extremely high degree of similarity between Plaintiff and her fellow students.  *See Marino*, 18 F. Supp. 3d at 341 (dismissing equal protection claim where student alleged that all students "were subject to the same curriculum, syllabus, grading requirements, mandatory student teaching, and overall course instructor," but failed to provide "specific allegations" sufficient to show a high degree of similarity).  Thus, Count Three is dismissed for failure to state a claim to the extent Plaintiff relies on the "class-of-one" theory to assert her equal protection claim.

Second, Plaintiff fails to state an equal protection claim under the selective enforcement theory for substantially the same reason—namely, Plaintiff has failed to provide sufficient allegations with respect to comparator students.  To prevail on a claim of selective enforcement, plaintiffs must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs.*, 273 F.3d at 499 (internal quotation marks omitted).  In contrast to class-of-one claims, selective enforcement claims do not require that a plaintiff allege a high degree of similarity with comparators. *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019).  Rather, a plaintiff must allege a "reasonably close resemblance" between the plaintiff and comparators. *Id.*  A plaintiff can prevail under this standard by showing that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.*

Even though the standard for stating a claim under the selective enforcement theory presents a lower bar than the "high degree of similarity" standard discussed above with respect to the class-of-one theory, Plaintiff's allegations fail to meet it.  As noted, Plaintiff provides only conclusory allegations regarding those who were purportedly similarly situated to her.  For example, Plaintiff states that Defendants "provided preferential treatment to [her] non-disabled peers" by "[a]llowing multiple students enrolled in the Program to complete the Program" despite violations of SCSU policies, Am. Compl. ¶ 99, and that Defendants "held Plaintiff to a higher standard than her non-disabled peers," *id.* ¶ 42.  But Plaintiff must allege more than simply that her comparators were her "peers" and that they were enrolled in the same program as her.  Rather, she must allege that these comparators were similarly situated to her "in all material respects." *See*

*Hu*, 927 F.3d at 96. Plaintiff's conclusory allegations plainly fail to do so. Accordingly, Plaintiff has failed to state an equal protection claim under the selective enforcement theory. *See Sanchez v. City of Hartford*, 10 F. Supp. 2d 162, 169 (D. Conn. 1998) ("Conclusory allegations of selective treatment are not sufficient.").

Based on the foregoing reasoning, Count Three is dismissed in full pursuant to Rule 12(b)(6).

## IV.     COUNTS FOUR AND FIVE:  ADA AND REHABILITATION ACT CLAIMS

SCSU's arguments in favor of dismissing Counts Four and Five mirror each other in most respects. Specifically, SCSU asserts that Plaintiff has failed to plausibly allege both that she is disabled under the ADA and the Rehabilitation Act and that SCSU discriminated against her due to her disability. SCSU's arguments regarding Counts Four and Five differ only with respect to whether sovereign immunity bars Plaintiff's claims. While SCSU concedes that the Eleventh Amendment does not bar Plaintiff's claims under § 504 of the Rehabilitation Act because the State waived sovereign immunity with respect to these claims, SCSU asserts that Plaintiff's ADA claim is barred by the Eleventh Amendment. For the reasons below, the Court finds that Plaintiff has failed to allege that she has a disability under the Rehabilitation Act and Title II of the ADA. Therefore, the Court need not decide whether sovereign immunity applies to Plaintiff's ADA claim, and Counts Four and Five are dismissed in full for failure to state a claim upon which relief can be granted.

In most cases, "the standards are the same for actions" under both the ADA and the Rehabilitation Act. *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009). Accordingly, courts typically analyze such claims together. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d

178, 187 (2d Cir. 2015).[7]  In order to establish a *prima facie* case under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate "(1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y]." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (alterations in original).

In order to be considered disabled for purposes of the ADA, a plaintiff must have a "physical or mental impairment that substantially limits one or more major life activities" or "be[] regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* § 12102(2)(A).  Such activities may also include major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  *Id.* § 12102(2)(B).  An individual meets the requirement of "being regarded as having such an impairment" if the individual "establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment."  *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 344 (S.D.N.Y. 2014) (quoting 42 U.S.C. § 12102(3)(A)).  In 2008, Congress amended the ADA to instruct the courts to construe the definition

---

[7] The Second Circuit has acknowledged that there are "subtle differences" between the ADA and the Rehabilitation Act, but "unless one of those subtle distinctions is pertinent to a particular case" the statutes should be treated "identically."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  Here, the parties have not provided any reason why the Court should apply different standards for each claim and, as a result, the Court will apply the same standard with respect to both statutes.

of disability "in favor of broad coverage of individuals." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(4)(A)).

Plaintiff has failed to plausibly allege that she has a disability for purposes of the first prong of her *prima facie* case.  Specifically, the Court agrees with SCSU's contention that Plaintiff has failed to plausibly allege that her disability substantially limits any major life activities.  Plaintiff alleges that she suffers from anxiety and PTSD, but the amended complaint is devoid of facts demonstrating that these conditions substantially limit any of Plaintiff's major life activities.  In response to the argument in Defendants' motion to dismiss that she has failed to allege a substantial limitation on major life activities, Plaintiff references allegations in the amended complaint that describe how "Defendants intentionally and maliciously refused to provide accommodations," leading to Plaintiff's "removal from the program in a manner that was specifically intended to exacerbate her symptoms of anxiety."  ECF No. 25 at 18–19 (citing Am. Compl. ¶¶ 111–12).  But such allegations center on Defendants' actions, rather than any limitation on Plaintiff's life activities.  Plaintiff also points to an allegation in the amended complaint that describes how Defendants took issue with Plaintiff's difficulty communicating via email and agreed to provide in-person communication during her student teaching placement.  ECF No. 25 at 19 (citing Am. Compl. ¶ 41).  Even assuming email communication constitutes a major life activity—a proposition for which Plaintiff has provided little support—this allegation does not indicate that any limitation on Plaintiff's ability to communicate via email was substantial.  Accordingly, Plaintiff has failed to allege that she is disabled for purposes of her ADA and Rehabilitation Act claims.

In light of the foregoing, Counts Four and Five are dismissed for failure to state a claim upon which relief can be granted.  Because the Court has found that Plaintiff has failed to state a

*prima facie* case under Title II of the ADA, it need not reach the question of whether sovereign immunity applies to Count Five. *See Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 152, 166 (2d Cir. 2013) (noting that "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end" and discussing the Second Circuit's "well-settled policy of avoiding the unnecessary adjudication of constitutional issues"); *Buchanan v. Maine*, 469 F.3d 158, 172–73 (1st Cir. 2006) (holding that, because the record established that there was no Title II claim against the State, "it was error for the district court to reach the Eleventh Amendment issue").

## V.      COUNTS SIX THROUGH EIGHT:  STATE LAW CLAIMS

Plaintiff brings the state law claims in Counts Six through Eight[8] against SCSU only.  In her opposition to Defendants' motion to dismiss, Plaintiff makes no arguments regarding Counts Six through Eight, raising the question of whether Plaintiff is abandoning these claims.  In any event, the Eleventh Amendment's sovereign immunity bar applies to state law claims against state agencies.  *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 121 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").  This principle applies to cases in which a plaintiff attempts to bring state law claims against a state university.  *See Jungels v. State Univ. Coll. of N.Y.*, 922 F. Supp. 779, 784 (W.D.N.Y. 1996), *aff'd sub nom. Jungels v. Jones*, 112 F.3d 504 (2d Cir. 1997) (holding that "absent consent to suit in federal court on the part of the State," the court had "no jurisdiction over the plaintiff's state law claims against" a state university).  Plaintiff does not argue that SCSU has consented to suit in federal court with respect to her state law claims.  Accordingly, these claims are dismissed as barred by sovereign immunity.

---

[8] In her amended complaint, Plaintiff mistakenly labeled her claim for pregnancy discrimination under the CFEPA as Count Six, rather than Count Seven.  Am. Compl. at 26.  For purposes of this ruling, the Court refers to Plaintiff's state law pregnancy discrimination claim as Count Seven.

VI.     **CONCLUSION**

For the reasons described herein, Defendants' motion to dismiss is GRANTED without prejudice to Plaintiff seeking leave to refile her complaint in a manner that seeks to remedy the deficiencies described in this ruling.  Any such motion for leave to file an amended complaint shall be filed by **November 1, 2022**, and will be governed by the standards set forth in Federal Rule of Civil Procedure 15.  If Plaintiff does not file such a motion by that date, then the Clerk shall enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 11th day of October, 2022.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE