## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA PUCCINELLI, | ) | |
| *Plaintiff,* | ) | 3:21-CV-763 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN CONNECTICUT STATE | ) | |
| UNIVERSITY, JOE BERTOLINO, | ) | |
| STEPHEN HEGEDUS, KARA | ) | July 28, 2023 |
| FARACLAS, and ROBERT PREZANT, | ) | |
| *Defendants*. | ) | |

### RULING AND ORDER ON PLAINTIFF'S MOTION TO AMEND

Sarala V. Nagala, United States District Judge.

In this federal civil rights action, Plaintiff Angela Puccinelli alleges that Defendant Southern Connecticut State University ("SCSU"), and Defendants Joe Bertolino, Stephen Hegedus, Robert Prezant, and Kara Faraclas (the "Individual Defendants," and collectively with SCSU, "Defendants"), discriminated against her based on her disability, unlawfully retaliated against her, and violated her right to procedural due process when she was a student at SCSU. The Court previously dismissed Plaintiff's amended complaint in full without prejudice to Plaintiff seeking leave to amend to remedy the deficiencies described in the Court's dismissal ruling. *See* ECF No. 33. Plaintiff now seeks leave to file a second amended complaint alleging that SCSU violated Section 504 of the Rehabilitation Act of 1973 ("Section 504"), *as amended*, 29 U.S.C. § 794, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12182, by intentionally discriminating against her, retaliating against her, and denying her reasonable accommodations, and that the Individual Defendants violated her Fourteenth Amendment right to procedural due process. For the reasons described below, Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART.

## I.     RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A.  Plaintiff's Amended Complaint

Plaintiff initiated this action in June of 2021 by filing both her complaint and amended complaint ("Am. Compl."), ECF No. 2, on the same day.  The amended complaint alleged that Plaintiff, who was formerly enrolled in SCSU's Special Education Teaching Program (the "Program"), *id.* ¶ 22, is disabled because she suffers from post-traumatic stress disorder ("PTSD") and anxiety resulting from a history of trauma and an upbringing in the foster care system, *id.* ¶ 2.[1]  Plaintiff claimed that, while she was in the Program, Defendants failed to accommodate her with respect to her anxiety, discriminated and retaliated against her, denied her the protection of SCSU's policies and procedures, and held her to a higher standard than her non-disabled peers. *Id.* ¶ 25.  On the basis of these allegations, Plaintiff asserted claims against SCSU and the following individuals:  Defendant Bertolino, SCSU's President; Defendant Hegedus, the Dean of SCSU's College of Education; Defendant Faraclas, the Chair of SCSU's Department of Special Education; and Defendant Prezant, SCSU's Provost and Vice President for Academic Affairs.  *Id.* ¶¶ 8–11. Defendants moved to dismiss Plaintiff's amended complaint, ECF No. 17, and the Court stayed discovery pending resolution of Defendants' motion, ECF No. 30.

### B.  The Court's Dismissal Ruling

In October of 2022, the Court granted Defendants' motion to dismiss the amended complaint in its entirety, finding that certain of Plaintiff's claims were barred by sovereign immunity, and that Plaintiff had otherwise failed to state claims upon which relief could be granted. ECF No. 33.  Relevant here, the Court found that Plaintiff had failed to state claims under Section

---

[1] The Court assumes the parties' familiarity with the facts previously alleged in Plaintiff's amended complaint, which the Court described in its dismissal ruling, ECF No. 33; *Puccinelli v. S. Conn. State Univ.*, No. 3:21-CV-00763 (SVN), 2022 WL 6770967, at *1 (D. Conn. Oct. 11, 2022).  Accordingly, the Court summarizes those facts only briefly here.

504 and the ADA because she did not plausibly allege that she was disabled. *Id.* at 24. The Court further found that Plaintiff's procedural due process claim was barred by sovereign immunity to the extent she sought relief against the Individual Defendants in their official capacities, and that Plaintiff had failed to state a procedural due process claim against the Individual Defendants in their individual capacities. *Id.* at 11. In finding that Plaintiff had failed to state a procedural due process claim, the Court first noted that Plaintiff had not plausibly alleged that she was deprived of a protected property interest in continuing her education because she did not assert that she was excluded from the educational process entirely. *Id.* at 19–20. The Court then found that, even if Plaintiff had alleged a protected interest, she had not alleged that the process Defendants afforded her before expelling her from the Program was inadequate. *Id.* at 20–21.[2] The Court set a deadline of November 1, 2022, for Plaintiff to seek leave to file a second amended complaint. *Id.* at 28.[3]

## C. Plaintiff's Present Motion for Leave to Amend

In her present motion, Plaintiff seeks to amend her complaint to remedy the pleading deficiencies described above. Plaintiff's motion is accompanied by a proposed second amended complaint ("PSAC"), ECF No. 38-3,[4] which is comprised of four counts. Counts One and Two—which assert violations of Section 504 and the ADA, respectively, and are based on the same factual allegations—allege that SCSU engaged in disparate treatment discrimination against

---

[2] The Court also found that Plaintiff had failed to state a procedural due process claim to the extent she sought injunctive and declaratory relief against the Individual Defendants in their individual capacities. ECF No. 33 at 14; *see Rosquist v. N.Y. Univ. Med. Ctr.*, No. 97 CIV. 8566 JGK, 1998 WL 702295, at *15 (S.D.N.Y. Oct. 7, 1998) (state officials are "amenable to suit under § 1983 in their official capacities only for prospective declaratory and injunctive relief and they may also be sued in their personal capacity for damages"), *aff'd*, 199 F.3d 1323 (2d Cir. 1999).

[3] The Court subsequently granted Plaintiff's request for an extension of her deadline until November 10, 2022, ECF No. 10, and Plaintiff filed her present motion on November 11, 2022, ECF No. 38. Defendants make no arguments regarding the untimely filing of Plaintiff's request to amend.

[4] Plaintiff attached to her reply in support of her present motion a "revised" proposed second amended complaint, in which she attempts to replead her claims in response to the arguments Defendants raised in opposition to her request to amend. Plaintiff offers no basis in the Local Rules or Federal Rules of Civil Procedure for filing such a document, and the Court considers it to be improper. *See* D. Conn. L. Civ. R. 7(f) (setting forth requirements for parties filing motions to amend). Accordingly, the Court will not consider Plaintiff's revised proposal and, instead, bases this ruling on the allegations in the proposed second amended complaint that initially accompanied Plaintiff's motion to amend.

Plaintiff, failed to accommodate Plaintiff with respect to her disability, and retaliated against Plaintiff for seeking accommodations and asserting violations of these statutes. Counts Three and Four assert procedural due process claims pursuant to section 1983; Plaintiff asserts Count Three against the Individual Defendants in their official capacities and Count Four against the Individual Defendants in their individual capacities.

1. *Proposed New Allegations Relevant to Plaintiff's Section 504 and ADA Claims*

For purposes of determining whether Plaintiff states claims upon which relief can be granted, the Court accepts as true all non-conclusory factual allegations in the PSAC.[5]

Relevant to Counts One and Two, the PSAC alleges that the symptoms of Plaintiff's PTSD and anxiety manifest in the following ways. First, Plaintiff's symptoms substantially impair her neurological and respiratory functions and cause an exacerbation of inflammatory and gastrointestinal issues related to her Crohn's Disease. *Id.* ¶ 32. Second, these symptoms substantially impair Plaintiff's ability to learn, think, comprehend, concentrate, organize daily tasks and activities, understand and process written and verbal communication, and express herself effectively, particularly in writing. *Id.* ¶ 33. The PSAC asserts that, when Plaintiff is experiencing these symptoms, she seeks to avoid people or locations that trigger further symptoms, seeks information about unresolved issues or tensions, and becomes vigilant or hypervigilant in her efforts to manage her symptoms. *Id.* ¶ 34. She becomes hypervigilant, for example, when she is deprived of information that would allow her to understand and avoid perceived threats to her safety and security. *Id.* Plaintiff further asserts that, when left unaccommodated, her response to

---

[5] In considering whether a plaintiff's proposed amended complaint states a claim, the Court considers "'the proposed amendments along with the remainder of the complaint,' accept[s] as true all non-conclusory factual allegations therein, and draw[s] all reasonable inferences in [the] plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (cleaned up).

triggers can result in tension in her interactions with others and a lack of trust in working relationships but that, with appropriate accommodations, she can deescalate her symptoms quickly and perform at an extremely high level.  *Id.* ¶¶ 35–36.

Plaintiff also attempts to add several allegations regarding how SCSU's agents and employees violated her rights under Section 504 and the ADA.  First, Plaintiff alleges that multiple individuals stated that she was unfit to become a teacher because of her disabilities or because of their perceptions of her disabilities, and that these individuals took actions to intimidate, pressure, and retaliate against her, and to prevent her from completing the Program.  *Id.* ¶ 125.  Next, Plaintiff alleges that SCSU's agents and employees took various steps to deny her the opportunity to participate in or benefit from SCSU's services, programs, and activities, and to otherwise discriminate against her.  *Id.* ¶ 126.  The PSAC alleges that, among other things, these individuals refused to meet with Plaintiff in person despite knowing that this would increase her anxiety, held Plaintiff to a higher standard than her non-disabled peers, and characterized Plaintiff's heightened anxiety as misconduct.  *Id.*

### 2. Proposed New Allegations Relevant to Plaintiff's Section 1983 Procedural Due Process Claims

Relevant to Counts Three and Four, the PSAC alleges that Defendants' decision to remove Plaintiff from the Program was disciplinary, rather than academic.[6]  Specifically, Plaintiff asserts that her discipline arose after she raised concerns that a child in her student teaching placement was not receiving the support mandated by the Individuals with Disabilities Education Act ("IDEA") and after she asserted her own rights as a student with a disability.  *Id.* ¶ 90; *see id.* ¶ 75. Plaintiff claims that, by their nature, these issues do not constitute violations of academic

---

[6] As described in further detail below, the process due to a student who is expelled for disciplinary reasons differs from the process due to a student who is expelled for academic reasons.  *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89–90 (1978).

standards. *Id.* ¶ 90. The PSAC further alleges that Defendants disciplined Plaintiff under policies pertaining to violations of academic standards, even though she had satisfied all academic requirements. *Id.* ¶ 91. Plaintiff asserts that, to the extent Defendants were disciplining her, she was entitled to greater procedural protections than those set forth in SCSU's Scaffolding Success Action Plan ("SSAP") for Education Students and that, even if the decision to expel her was academic, she was at least entitled to the process set forth in the SSAP procedures. *Id.* ¶¶ 92–93.

In addition, the PSAC includes allegations that, between January and May of 2020, during the period after Plaintiff was dismissed from the Program, Plaintiff attempted to transfer to other universities, but a significant portion of the credits she earned at SCSU would not transfer to other schools. *Id.* ¶ 113; *see id.* ¶ 108. Then, although Plaintiff was conditionally accepted to a graduate program, SCSU failed to timely release her transcripts because it had placed a hold on Plaintiff's file for failure to pay tuition. *Id.* ¶¶ 113–14. Plaintiff claims that Defendants have refused to reinstate her to the Program, which has caused her ongoing loss because of the substantial number of credits she cannot transfer to another program. *Id.* ¶ 116. Plaintiff further claims that, in order to complete the Program, Defendants would require her to apply for readmission. *Id.* ¶ 117. She claims that, as part of the application process, Defendants would require her to: state that SCSU did not discriminate or retaliate against her or violate any of her rights; acknowledge that she engaged in misconduct that justified Defendants' actions against her; and disavow her claims against Defendants, without any guarantee that doing so would result in readmission. *Id.* ¶¶ 118–19. According to the PSAC, Defendants have refused to expunge the expulsion and record of discipline from Plaintiff's record, thereby causing irreparable and ongoing harm to Plaintiff by preventing her admission to an equivalent program. *Id.* ¶ 120.

The PSAC also includes allegations describing how the College of Education is an independently governed college because, for example, it has its own, separate admission process. *Id.* ¶ 142. Plaintiff further claims that SCSU, the Connecticut State Board of Education, and the Council for the Accreditation of Educator Preparation have established processes governing removal of students from programs in the College of Education. *Id.* ¶¶ 143–44. In connection with these allegations, Plaintiff asserts that Defendants deprived her of her liberty and/or property interests by excluding her from the entire educational process within the College of Education and refusing to grant her a degree that she had substantially earned and was entitled to receive. *Id.* ¶¶ 145–46. She claims the process Defendants afforded her was inadequate because, among other things, they failed to provide her with an explanation of the evidence against her and took steps that were designed to increase her symptoms of anxiety. *Id.* ¶ 150. As part of her section 1983 claims, Plaintiff also seeks to assert various violations of Section 504 and the ADA. *Id.* ¶ 155.

## II.    LEGAL STANDARD GOVERNING AMENDMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(a)

Federal Rule of Civil Procedure 15(a) governs amendments before trial. Rule 15(a)(1) addresses time periods during which a party may amend its pleading once as a matter of course. Rule 15(a)(2) states that, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2), which provides that the Court "should freely give leave when justice so requires," sets forth a "liberal" and "permissive" standard, *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). The only grounds on which denial of leave to amend "has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, or futility." *Id.* (cleaned up) (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). Here, there is no dispute that Rule 15(a)(2) applies to Plaintiff's present motion. Defendants oppose amendment on futility grounds only.

The party opposing a motion to amend on futility grounds bears the burden of establishing that amendment would be futile. *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc.*, 681 F.3d at 119. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Accordingly, "a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1 (quoting *Iqbal*, 556 U.S. at 679). If, however, "the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief," the plaintiff "ought to be afforded an opportunity to test his claim on the merits." *United States v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (emphasis added) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III.   COUNTS ONE AND TWO:  SECTION 504 AND ADA CLAIMS AGAINST SCSU

Counts One and Two—brought pursuant to Section 504 and the ADA, respectively—assert claims against SCSU only. In each of these claims, Plaintiff seeks to proceed on three theories of liability: disparate treatment discrimination; failure to accommodate discrimination; and retaliation. Defendants argue that these claims would be futile for three reasons: first, Plaintiff's ADA claim in Count Two against SCSU is barred in full by sovereign immunity; second, for purposes of her discrimination claims under both Section 504 and the ADA, Plaintiff has failed to plausibly allege that she is disabled or that SCSU discriminated against her based on her purported

disability; and third, for purposes of her retaliation claims under both Section 504 and the ADA, Plaintiff has failed to allege facts demonstrating a causal connection between her protected activity and any adverse action she experienced.  For the reasons below, the Court agrees with Defendants that Plaintiff's proposed amendments to assert failure to accommodate and retaliation claims would be futile.  The Court will, however, permit Plaintiff to amend her complaint to assert Counts One and Two to the extent she alleges disparate treatment discrimination.[7]

### A. Sovereign Immunity

The Court begins by addressing SCSU's argument that Plaintiff's ADA claim in Count Two is barred in full because it has sovereign immunity.

The Eleventh Amendment to the U.S. Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

---

[7] Plaintiff argues that Defendants improperly submitted exhibits that the Court may not consider in deciding the present motion. When a proposed amended complaint is challenged on futility grounds, the Court may only consider materials properly considered on a Rule 12(b)(6) motion to dismiss. *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 355 (S.D.N.Y. 2020). That is, the Court may look only to the allegations on the face of the complaint and documents that are attached to the complaint, incorporated in the complaint by reference, or integral to the complaint because the complaint relies heavily on their terms and effect. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A document is incorporated by reference if the complaint makes "a clear, definite and substantial reference" to it. *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 354 (S.D.N.Y. 2015), *aff'd*, No. 15-2528 (2d Cir. Mar. 21, 2016). Here, Defendants' exhibits consist of meeting summaries, communications between the parties, SCSU's SSAP procedures, and decisional letters SCSU provided to Plaintiff. While it appears likely that most, if not all, of these exhibits are clearly, definitely, and substantially referenced in the PSAC, the Court need not determine whether they are properly considered because, upon review of the exhibits, the Court finds that none of them would alter any finding in this ruling. Specifically, without resort to the exhibits, the Court agrees with Defendants that Counts One and Two fail to state claims for failure to accommodate and retaliation, and that Counts Three and Four would be futile to the extent Plaintiff seeks a declaration that Defendants violated her rights in the past, to the extent she seeks monetary damages against Defendant Bertolino, and to the extent she attempts to use her section 1983 claims as a vehicle for asserting violations of Section 504 and the ADA. While certain exhibits may weigh in Defendants' favor at summary judgment with respect to the claims the Court is allowing to proceed, the exhibits would not defeat these claims at the pleading stage. First, while the exhibits point to other reasons—besides her purported disability—why Plaintiff *may* have been dismissed from the Program, the exhibits are not dispositive on this issue. Thus, drawing all inferences in Plaintiff's favor, as the Court must, the exhibits do not defeat Plaintiff's disparate treatment claims. Nor, with respect to Plaintiff's procedural due process claims, are the exhibits dispositive as to whether the decision to dismiss Plaintiff was disciplinary or academic, whether Defendants provided Plaintiff with an explanation of the evidence against her, whether Defendants were motivated by malice or ill-will in dismissing Plaintiff, whether the Individual Defendants are entitled to qualified immunity, or whether the Individual Defendants have the authority to provide Plaintiff with the injunctive relief she requests.

of any Foreign State." U.S. Const. amend. XI.  While the Eleventh Amendment does not expressly provide that citizens of a state cannot sue their own state, the Supreme Court has held that a state that refuses to consent to suit is immune from suits brought in federal courts "by her own citizens." *Emps. of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973).  This proscription "extends to any entity considered to be an 'arm of the State,' which includes state universities." *Tomasko v. W. Conn. State Univ.*, No. 3:11CV1019 (JBA), 2012 WL 3062156, at *1 (D. Conn. July 26, 2012) (internal citation omitted).

There are two primary exceptions to sovereign immunity:  "(1) a state may waive its immunity from suit, or (2) Congress may expressly and validly abrogate the immunity pursuant to specific authority, such as its authority under Section 5 of the Fourteenth Amendment." *Kelly v. N.Y. State Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, at *2 (2d Cir. Apr. 25, 2022) (summary order).  When it enacted the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment." *United States v. Georgia*, 546 U.S. 151, 154 (2006) (alteration in original) (quoting 42 U.S.C. § 12101(b)(4)).  In connection with this authority, the ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202 (footnote omitted).  The Supreme Court has held that this language constitutes "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154.

Here, Plaintiff's discrimination claims in Count Two fall under Title II of the ADA, which protects qualified individuals with disabilities from discrimination in accessing services, programs, and activities provided by, among other entities, state governments.  *See* 42 U.S.C. § 12132.  Under Title II, an individual may sue the state government for disability discrimination.  *Id.* § 12133.  In

*Georgia*, the U.S. Supreme Court held that, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. at 159. Thus, a plaintiff's ability to sue a state under Title II is "tied to the plaintiff's allegation that the defendants violated [her] Fourteenth Amendment rights." *Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 296 (W.D.N.Y. 2019). Put differently, "the law clearly permits a plaintiff to 'sue a state under Title II if the violation alleged is also a violation of the Fourteenth Amendment.'" *Id.* (quoting *Rosen v. Pallito*, No. 2:13-CV-277, 2017 WL 6513663, at *3 (D. Vt. Dec. 19, 2017)).

The Supreme Court has directed lower courts to evaluate such suits "on a claim-by-claim basis" to determine "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. The Supreme Court thus "explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015).

There is a "growing fracture" among the district courts in the Second Circuit in their "approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA" when no Fourteenth Amendment violation is alleged. *Id.* at 193; *see Rosen*, 2017 WL 6513663, at *3. Before *Georgia*, the Second Circuit applied the approach set forth in *Garcia v. S.U.N.Y. Health Sciences Center*, 280 F.3d 98 (2d Cir. 2001), which held that, by enacting Title II, Congress had exceeded its authority under section 5 of the Fourteenth

Amendment but that Title II suits "could be limited to circumstances in which it had not." *See Dean*, 804 F.3d at 194.  Under the approach in *Garcia*, "Title II monetary claims against a state . . . require a showing of discriminatory animus or ill will to limit such suits to disparate treatment that violates the Equal Protection Clause of the Fourteenth Amendment or falls within the range of conduct Congress could otherwise prohibit pursuant to its prophylactic authority." *Id.*  The Second Circuit has acknowledged, however, that the Supreme Court's decision in *Georgia* "calls *Garcia*'s validity into question." *Id.*  Some courts in this Circuit continue to apply *Garcia*, while others, in light of *Georgia*, "determine whether Congress's purported abrogation of immunity for conduct that violates Title II but not the Fourteenth Amendment is nevertheless valid." *Id.* at 195.

The Second Circuit has not directly addressed how district courts should proceed in the wake of *Georgia* when assessing Congress's abrogation of sovereign immunity under Title II. *See Marshall*, 374 F. Supp. 3d at 297.  Likewise, the Second Circuit has declined to express a position "as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability." *Dean*, 804 F.3d at 195. The Second Circuit has, however, advised district courts to, "at a minimum, evaluate whether the approach erected in *Georgia* applies." *Id.*  In any event, however, "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013); *see also Buchanan v. Maine*, 469 F.3d 158, 172–73 (1st Cir. 2006) (noting that, if the court determines at the first step of its *Georgia* analysis that "the State's conduct does not violate Title II," then "the court does not proceed to the next step in the analysis").

Here, SCSU's sovereign immunity arguments apply only to the first step of the *Georgia* analysis.  That is, SCSU argues only that the Eleventh Amendment bars Count Two because

Plaintiff has failed to state a Title II claim.  As discussed in further detail below, the Court agrees with SCSU that the PSAC fails to state claims for failure to accommodate and retaliation under the ADA.  Thus, to the extent Plaintiff seeks to proceed under these theories, Count Two would be barred by the Eleventh Amendment.[8]

By contrast, as set forth below, the Court finds that Plaintiff's PSAC states a plausible claim for disparate treatment discrimination.  Thus, the Court's analysis would typically proceed to the next steps of the *Georgia* analysis.  Because SCSU's arguments on this issue only relate to step one of the *Georgia* analysis, however, the Court need not proceed further.  The Court therefore declines to find that Plaintiff's ADA disparate treatment claim would be barred by sovereign immunity under steps two or three of the *Georgia* analysis.[9]

### B.  Plaintiff's Discrimination Claims in Counts One and Two

The Court turns next to the substance of Plaintiff's disparate treatment and failure to accommodate claims in Counts One and Two.  For the reasons below, the Court finds that Plaintiff has stated a claim for disparate treatment discrimination but not for failure to accommodate.

In most cases, the standards are the same for actions alleging discrimination under both the ADA and the Rehabilitation Act.  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).  Accordingly,

---

[8] Plaintiff appears to be asserting her retaliation claim in Count Two under Title V of the ADA, which generally prohibits retaliation against those who assert violations of the ADA.  *See* 42 U.S.C. § 12203.  The law is not presently settled on the issue of whether Congress validly abrogated sovereign immunity for retaliation claims under Title V when such claims are predicated on Title II claims.  *Compare Kiernozek v. N.Y. State Dep't of Tax'n & Fin.*, No. 1:14-CV-0481 (BKS/CFH), 2017 WL 5468321, at *12 (N.D.N.Y. Mar. 10, 2017) (noting that "district courts within the Second Circuit have consistently held that the Eleventh Amendment bars retaliation claims under Title V of the ADA" (cleaned up)), *with Rosen*, 2017 WL 6513663, at *6 ("There is district court authority for the proposition that the Eleventh Amendment will not bar a Title V claim when it is predicated on a Title II claim.").  In any event, because the Court finds that Plaintiff's PSAC fails to state a claim for retaliation, the Court need not reach this question.

[9] The Second Circuit has noted that several other circuits "hold that abrogation of state sovereign immunity under Title II in the context of discrimination in access to public higher education for individuals with disabilities falls within Congress's enforcement power under the Fourteenth Amendment."  *Dean*, 804 F.3d at 195 n.9.

courts typically analyze such claims together. *Dean*, 804 F.3d at 187.[10]  In order to establish a *prima facie* case of discrimination under Section 504 or the ADA, a plaintiff must show:  (1) that she is a "qualified individual with a disability"; (2) that she was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity"; and (3) that "such exclusion or discrimination was due to [the plaintiff's] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016).  Exclusion or discrimination may take the form of intentional discrimination (disparate treatment), disparate impact, or failure to make a reasonable accommodation. *Id.*; *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

Here, Defendants contend that the PSAC fails to plausibly allege the first and third prongs of Plaintiff's *prima facie* case.  The Court addresses each argument in turn.

### 1. Whether the PSAC Plausibly Alleges that Plaintiff Is a Qualified Individual with a Disability

To begin, the Court finds that Plaintiff has plausibly alleged that she is disabled for purposes of her discrimination claims.  To be considered disabled, a plaintiff must have a "physical or mental impairment that substantially limits one or more major life activities" or be "regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).  Such activities may also include major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* §

---

[10] The Second Circuit has acknowledged that there are "subtle differences" between the ADA and the Rehabilitation Act, but "unless one of those subtle distinctions is pertinent to a particular case" the statutes should be treated "identically." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  Here, the parties draw no distinctions between the standards applicable to Counts One and Two of the PSAC and, as a result, the Court will apply the same standard to both claims.

12102(2)(B).   An individual meets the requirement of "being regarded as having such an impairment" if the individual "establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment." *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 344 (S.D.N.Y. 2014) (quoting 42 U.S.C. § 12102(3)(A)).   In 2008, Congress amended the ADA to instruct the courts to construe the definition of disability "in favor of broad coverage of individuals." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(4)(A)).

For purposes of her request to amend, Plaintiff has plausibly alleged that she suffers from a "physical or mental impairment that substantially limits one or more major life activities," *see* 42 U.S.C. § 12102(1).  First, the PSAC alleges that Plaintiff suffers from PTSD and anxiety, PSAC ¶ 32, both of which are impairments under the ADA, *see Fitzgerald v. We Co.*, No. 20 CIV. 5260 (AT), 2022 WL 952963, at *8 (S.D.N.Y. Mar. 30, 2022) (noting that "generalized anxiety disorder has been 'recognized as constituting an impairment under the ADA" (cleaned up)); *Rivera v. Doe*, No. 3:22-CV-852 (SVN), 2023 WL 319600, at *4 (D. Conn. Jan. 19, 2023) (stating that PTSD is a "mental impairment" under the ADA).  Next, the PSAC offers specific allegations regarding how Plaintiff's PTSD and anxiety place her in a state of heightened vigilance.  PSAC ¶ 34.  Plaintiff further asserts that her symptoms limit her ability to concentrate, think, and communicate, *id.* ¶ 34, each of which constitutes a major life activity under 42 U.S.C. § 12102(2)(A).  Plaintiff's assertion that she is disabled is further buttressed by her allegation that her symptoms impact her major bodily functions, including by exacerbating the gastrointestinal symptoms of her Crohn's Disease. *Id.* ¶ 32; *see* 42 U.S.C. § 12102(2)(B) (providing that "major bodily functions" include "digestive" and "bowel" functions); *Miller v. E. Midwood Hebrew Day Sch.*, No. 19 CV 5580 (AMD)(LB), 2021 WL 966166, at *4 (E.D.N.Y. Feb. 15, 2021) (finding that the plaintiff's Crohn's Disease,

which was alleged to substantially limit his major life activities, met the ADA's definition of disability), *report and recommendation adopted*, No. 19-CV-5580 (AMD) (LB), 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021); *see also Genova v. Cnty. of Nassau*, No. CV 17-4959 (SJF)(AYS), 2019 WL 8407451, at *7 (E.D.N.Y. Dec. 26, 2019) ("[T]he Court holds, in the context of summary judgment, that Plaintiff's Crohn's disease is, in fact, a disability."), *report and recommendation adopted*, No. 17-CV-4959 (SJF)(AYS), 2020 WL 813160 (E.D.N.Y. Feb. 19, 2020), *aff'd*, 851 F. App'x 241 (2d Cir. 2021) (summary order).

The Court is unpersuaded by Defendants' argument that Plaintiff has not plausibly alleged that her PTSD and anxiety substantially limit her "as compared to most people in the general population," ECF No. 44 at 12 (citing 28 C.F.R. § 36.105(d)(1)(v)).  As noted, the PSAC alleges that Plaintiff suffers from conditions recognized as impairments under the ADA and that these impairments limit her major life activities and bodily functions in specific ways.  Drawing all inferences in Plaintiff's favor, as the Court must at this stage, the PSAC plausibly alleges that she is substantially limited as compared to most people in the general population.  *See* 28 C.F.R. § 36.105(d)(1)(v) ("An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.").

For these reasons, the Court finds that Plaintiff has plausibly alleged that she is a qualified individual with a disability for purposes of her Section 504 and ADA discrimination claims.  Thus, the Court must assess whether Plaintiff has plausibly alleged that SCSU intentionally discriminated against her based on her disability or failed to reasonably accommodate her.

### 2. *Disparate Treatment*

First, the Court finds that the PSAC states a plausible claim for disparate treatment discrimination.  Disparate treatment discrimination under the ADA occurs when a defendant treats

the plaintiff "less favorably than others" because of the plaintiff's disability. *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020). Thus, where a plaintiff bases her claim on a theory of intentional discrimination in the education context, "she may raise an inference of discrimination by alleging that the defendants treated her 'less favorably than a similarly situated' student; outside her protected group." *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589 (JMF), 2016 WL 3093994, at *4 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) (summary order).

Here, Plaintiff's allegations suffice to raise an inference of discrimination for purposes of her disparate treatment claim. Plaintiff alleges that, after she reported incidents of bullying based on her disability and sought accommodations from SCSU's Disability Resource Center and various faculty and staff, Defendant Hegedus sent her a letter stating that she would not be permitted to complete her student teaching placement in the fall of 2019. PSAC ¶¶ 42–43. Then, when Hegedus eventually let Plaintiff continue with her student teaching placement, he allegedly "explained that if there is a negative situation that does occur during student teaching then the district can and will ask for [Plaintiff] to be removed from the placement and it is unlikely that a new placement will be secured by SCSU." *Id.* ¶ 51. Plaintiff alleges that "[o]ther non-disabled students were not held to a standard that required dismissal from the Program in the event of any 'negative situation' in their student teaching placement." *Id.* ¶ 61; *see id.* ¶ 54 ("Other reasons cited for Defendants' decisions . . . held Plaintiff to a higher standard than her non-disabled peers."). She further alleges that Hegedus "raised concerns that Plaintiff could not be successful specifically because of symptoms of her anxiety." *Id.* ¶ 60.

Read together, these allegations suggest that Plaintiff was held to a higher standard than her non-disabled peers because of her disability, which ultimately led to her removal from the

Program.  Moreover, Hegedus' alleged statements raising concerns about whether Plaintiff could complete her student teaching placement on account of her anxiety suggest a discriminatory motive.  Accordingly, the Court finds that, for present purposes, the PSAC plausibly alleges a disparate treatment discrimination claim.

### 3.  Failure to Accommodate

The PSAC does not, however, state a plausible claim for failure to accommodate.  "In the education context, the ADA and the Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program[.]"  *Dean*, 804 F.3d at 186–87 (citations omitted).  Therefore, "while a covered entity must make reasonable accommodations, it does not have to provide a disabled individual with every accommodation [she] requests or the accommodation of [her] choice."  *Id.* at 187 (internal quotation marks omitted).  When examining claims under this theory, courts consider "whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'"  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  In the Second Circuit, "a plaintiff generally bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial."  *Walker v. City of New York*, 367 F. Supp. 3d 39, 51 (S.D.N.Y. 2019) (citing, in part, *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).

Here, although the PSAC vaguely references Plaintiff's "need" and "requests" for accommodations, as well as Defendants' failure to implement accommodations, *see, e.g.*, PSAC ¶¶ 30, 56, 127, 131, Plaintiff expressly identifies only one such accommodation.  Specifically, she alleges that Defendants "agreed to provide in-person communication during her student-teaching placement."  *Id.* ¶ 53.  Yet, with respect to the purported denial of this accommodation, Plaintiff

offers only the conclusory allegation that Defendants "violated their own agreement." *Id.* ¶ 83. Moreover, the PSAC alleges that Defendants did, in fact, meet with Plaintiff in person regarding issues pertaining to her student teaching placement, *see id.* ¶¶ 95–96 (discussing September 20, 2019, meeting); *id.* ¶¶ 103–04 (discussing November 22, 2019, meeting), and that *Plaintiff* herself initiated email communications, which were obviously not in-person communications, with Defendants and other SCSU personnel several times, *see id.* ¶ 77 (alleging Plaintiff emailed student teaching supervisor Judith Terpstra to seek guidance); *id.* ¶ 80 (alleging Plaintiff emailed Faraclas about the placement); *id.* ¶ 100 (discussing a second email Plaintiff sent to Terpstra).

Plaintiff does allege that, *after* she was dismissed from the Program, SCSU faculty and staff refused to speak with her on the phone and would only communicate with her via email. *Id.* ¶ 111. But the Court cannot discern how such a refusal could possibly provide a basis for Plaintiff's failure to accommodate claim, given that the refusal occurred after the decision to dismiss her from the Program became final. That is, Plaintiff was not a student in the Program at the time SCSU faculty and staff purportedly refused to communicate with her in any manner other than email.

Accordingly, in light of the lack of specificity in the PSAC regarding any time when Plaintiff was denied a reasonable accommodation as a student in the Program, the Court finds that the PSAC fails to state a claim under this theory.

## C.  Plaintiff's Retaliation Claim

Finally, the Court finds that the PSAC fails to state a claim for retaliation. Both Section 504 and the ADA contain provisions prohibiting retaliation for asserting violations under these statutes, and these provisions are generally governed by the same standard. *See Davis v. Power Auth.*, No. 22-488, 2023 WL 3064705, at *2 (2d Cir. Apr. 25, 2023) (summary order). The

elements of a retaliation claim under Section 504 and the ADA are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002), *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A). Protected activity includes, for example, "actions taken to report, oppose or protest unlawful discrimination, including complaints of discrimination to the employer, and the filing and pursuit of administrative charges." *Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces)*, 791 F. Supp. 2d 332, 339 (W.D.N.Y. 2011). Requests for accommodations also constitute protected activity. *Weixel*, 287 F.3d at 149.

Here, Defendants do not dispute that Plaintiff engaged in protected activity by seeking accommodations for her disability and reporting instances of bullying between January of 2019, and May 1, 2019;[11] that SCSU knew of that protected activity; or that Plaintiff's dismissal from the Program constituted an adverse action. Defendants challenge only the fourth element of Plaintiff's retaliation claim, asserting that Plaintiff has not sufficiently alleged a causal connection between her protected activity and her dismissal from the Program. In response, Plaintiff relies on Defendant Hegedus' July 29, 2019, decision that Plaintiff would not be allowed to complete her student teaching placement in the fall of 2019. ECF No. 51 at 7; *see* PSAC ¶ 43. In particular, Plaintiff argues that, shortly after her protected activity, Hegedus decided that she would not be permitted to complete her student teaching placement and, in doing so, he referenced her correspondence requesting accommodations for her disability. Plaintiff further alleges, however, that Hegedus' decision was reversed and that she was subsequently permitted to proceed with her

---

[11] Plaintiff does not dispute Defendants' assertion that she did not take part in any protected activity after May 1, 2019, and the PSAC does not specifically allege that Plaintiff took part in any relevant protected activity after that date.

student teaching placement.  *Id.* ¶ 51.  Plaintiff fails to explain how Hegedus' short-lived decision to remove her from her placement constituted an adverse action, given that the decision was reversed before the placement was scheduled to begin.  Plaintiff does not argue that her retaliation claim relies on the *actual discontinuation* of her student teaching placement, which took place approximately four months after her protected activity, or her *subsequent dismissal* from the Program three months later.  Rather, she argues only that she has alleged a causal connection between her protected activity and Hegedus' *initial decision* not to allow her to proceed with her student teaching placement.[12]  Accordingly, because Plaintiff alleges that the only adverse action she experienced with respect to her retaliation claim was reversed before it had any material effect, she has offered no basis for the Court to conclude that she has stated a plausible retaliation claim.[13]

     D.  <u>In Sum</u>

For these reasons, the Court finds that Counts One and Two of the PSAC fail to state claims for failure to accommodate or retaliation.  Thus, to the extent Plaintiff seeks to proceed under these theories, Count One would not withstand a Rule 12(b)(6) dismissal motion and Count Two would be barred by sovereign immunity.  By contrast, Plaintiff has plausibly alleged claims for disparate treatment discrimination in Counts One and Two.  Accordingly, Plaintiff's request to amend to assert Section 504 and ADA claims is GRANTED IN PART and DENIED IN PART.

---

[12] In Counts Three and Four, Plaintiff seeks to allege that Defendants retaliated against her in various ways in the months after her dismissal became final.  Plaintiff has not, however, even attempted to argue that she has alleged a causal relationship between her protected activity and this conduct.  And, in any event, for reasons discussed in further detail below, section 1983 is not a proper vehicle for Plaintiff to assert Section 504 and ADA claims.

[13] Even if Plaintiff were seeking to allege that her dismissal constituted an adverse action for purposes of her retaliation claims, the Court would find her allegations in this regard insufficient.  The PSAC alleges the following sequence of events:  first, after learning of Plaintiff's protected activity, SCSU decided to discontinue her student teaching placement; next, after meeting with Plaintiff, SCSU reconsidered its decision and allowed Plaintiff to proceed with her student teaching placement; and then, more than four months later and after subsequent events occurred, SCSU chose to discontinue the placement and, eventually, to remove Plaintiff from the Program.  The alleged intervening events between Plaintiff's protected activity and her dismissal—most importantly, SCSU's affirmative decision to permit her to proceed with her placement—break any chain of causation Plaintiff may have been able to claim by virtue of mere temporal proximity.

## IV.   COUNTS THREE AND FOUR:   SECTION 1983 PROCEDURAL DUE PROCESS CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

In Counts Three and Four, Plaintiff asserts procedural due process claims against the Individual Defendants pursuant to section 1983.  Although Plaintiff's PSAC is not a model of clarity, the Court interprets Count Three as seeking only declaratory and injunctive relief against the Individual Defendants in their official capacities and Count Four as seeking only monetary relief against the Individual Defendants in their individual capacities.  *Compare* PSAC ¶¶ 157–58 (seeking declaratory and injunctive relief in Count Three), *with id.* ¶ 160 (alleging in Count Four that, as a result of the Individual Defendants' conduct, Plaintiff has "suffered economic and emotional damages").  Defendants contend that Plaintiff's proposed amendments as to these claims would be futile for the following reasons:  first, they are barred in part by sovereign immunity; second, Plaintiff has failed to sufficiently allege the elements of a procedural due process claim; third, Plaintiff's claims for monetary damages are barred by qualified immunity; and fourth, the Individual Defendants do not have authority to provide the injunctive relief Plaintiff requests.  Defendants also contend that Plaintiff has failed to allege Defendant Bertolino's personal involvement in any alleged constitutional violation.

For the reasons below, the Court finds that Counts Three and Four would be futile to the extent Plaintiff seeks a declaration that Defendants violated her rights in the past, to the extent Plaintiff seeks monetary damages against Defendant Bertolino, and to the extent Plaintiff attempts to use her section 1983 claims as a vehicle for asserting violations of Section 504 and the ADA.  By contrast, Counts Three and Four would not be futile to the extent Plaintiff otherwise seeks declaratory and injunctive relief against the Individual Defendants in their official capacities and monetary relief against the Individual Defendants in their individual capacities.  Accordingly,

Plaintiff's request to amend her complaint to assert Section 504 and ADA claims is GRANTED IN PART and DENIED IN PART.

　　A.　Sovereign Immunity

To begin, the Court finds that Plaintiff's proposed claims against the Individual Defendants would be barred by sovereign immunity only to the extent the PSAC seeks a declaration that Defendants violated federal law in the past.

First, the Eleventh Amendment does not bar section 1983 claims for monetary damages against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," and that the Eleventh Amendment "does not bar such suits"). Accordingly, sovereign immunity does not bar Plaintiff's claims for monetary damages against the Individual Defendants. For the avoidance of doubt, the Court notes that to the extent Plaintiff, through inartful pleading, did in fact intend to seek monetary damages from the Individual Defendants in their official capacities, such claims are plainly barred by the Eleventh Amendment. *See Mulero v. Blumenthal*, No. 3:10CV1328 (WWE), 2011 WL 1194401, at *1 (D. Conn. Mar. 28, 2011) ("Absent a waiver of Eleventh Amendment immunity, the Eleventh Amendment bars claims for damages brought against state employees sued in their official capacities when the state is the real party in interest." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).

Next, the Eleventh Amendment bars Plaintiff's requests for declaratory and injunctive relief only to the extent she seeks a declaration that Defendants violated her rights in the past. Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff suing for declaratory or injunctive relief may, under limited circumstances, "avoid the Eleventh Amendment bar to suit and proceed against individual state officers . . . in their official capacities." *In re Deposit Ins. Agency*, 482 F.3d 612,

618 (2d Cir. 2007); *see Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475–76 (2d Cir. 2019) (discussing *Ex parte Young* with respect to both declaratory and injunctive relief).  In determining whether the *Ex parte Young* doctrine applies, a court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Here, Plaintiff seeks declarations that Defendants' practices both "violated" and "continue to violate" her rights under the Fourteenth Amendment.  PSAC at 27.  She also seeks injunctive relief in the form of orders directing Defendants to reinstate her to the Program, cease their discriminatory practices, and expunge references to discipline from her record.  *Id.* at 27 & ¶¶ 157–58.  At the outset, as the Court noted in its dismissal ruling, "[a] declaration that a violation of federal law occurred in the past" is "entirely retroactive" and "does not mandate compliance with federal law *in the future* as required by *Ex parte Young*."  *T.W. v. N.Y. State Bd. of L. Exam'rs*, No. 16-CV-3029 (RJD) (MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022).  Thus, to the extent Plaintiff requests a declaration that Defendants' practices violated federal law in the past, her claim in Count Three is barred by the Eleventh Amendment.

By contrast, Plaintiff's remaining requests for declaratory and injunctive relief fall within the *Ex parte Young* exception to sovereign immunity.  First, the PSAC alleges an ongoing violation of federal law.  "A violation is deemed ongoing when its detrimental impact continues into the present." *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014).  Here, the PSAC asserts that Defendants have refused to reinstate her, PSAC ¶ 116, that Defendants have refused to "expunge the expulsion and record of discipline against [her], thereby causing irreparable and ongoing harm by preventing Plaintiff's admission to an equivalent program," *id.* ¶ 120, and that,

"[a]s a result of Defendants' conduct, Plaintiff continues to suffer damages, having paid for and substantially completed the Program, with no pathway to transfer," *id.* ¶ 153.  These allegations suffice to assert an ongoing violation of federal law for purposes of the first prong of the *Ex parte Young* doctrine.  *See Rives v. SUNY Downstate Coll. of Med.*, No. 20-CV-621 (RPK) (LB), 2022 WL 4646820, at *6 (E.D.N.Y. Sept. 30, 2022) ("Because the 'detrimental impact' of plaintiff's allegedly unconstitutional dismissal [from the state university] 'continues into the present,' the alleged violation of federal law is 'ongoing' for purposes of *Ex parte Young*." (internal citation omitted)), *reconsideration denied*, No. 20-CV-621 (RPK) (LB), 2022 WL 15497120 (E.D.N.Y. Oct. 27, 2022)).

For purposes of the second prong of the *Ex parte Young* doctrine, the PSAC seeks relief that is properly characterized as prospective.  First, Plaintiff's request for a declaration that Defendants "continue to violate" federal law is precisely the type of declaratory relief that is properly characterized as prospective because it seeks to prevent ongoing and future violations of federal law.  *See Seneca Nation v. Hochul*, 58 F.4th 664, 672 n.39 (2d Cir. 2023) (stating that "[a] declaration that the status quo constitutes an ongoing violation of federal law" is prospective relief); *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at *14 (D. Conn. Nov. 4, 2022) (plaintiff's requests for relief fell within the *Ex parte Young* exception where he sought "a declaration that the Defendants . . . continue to violate the Eighth and Fourteenth Amendments," and "prospective injunctive relief as a result of that declaration"); *see also Martinez v. Malloy*, 350 F. Supp. 3d 74, 89 (D. Conn. 2018) (finding that plaintiffs satisfied the second prong of the *Ex parte Young* doctrine where they requested declaratory relief "to prevent future constitutional violations").

Likewise, Plaintiff's requests for injunctive relief in the form of orders directing Defendants to cease their discriminatory practices, reinstate Plaintiff to the Program, and expunge references to discipline from Plaintiff's record are all properly characterized as prospective. *See Zeigler v. New York*, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013) ("[S]uits against state officials in their official capacities for prospective injunctive relief to stop ongoing violations of federal law are permitted."); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) (collecting cases and noting that "claims for reinstatement to previous employment" satisfy the *Ex parte Young* exception); *Rives*, 2022 WL 4646820, at *6 ("[T]he relief sought—reinstatement [of the student-plaintiff] by the Dean—is prospective in nature."); *Desir v. Bd. of Co-op. Educ. Servs.*, No. 07-CV-1994 (RRM)(MJO), 2008 WL 4508735, at *2 (E.D.N.Y. Sept. 30, 2008) (finding equitable relief in the form of "the expunging of certain records from [the plaintiff's] employment file" cognizable under *Ex parte Young*); *Malkan v. Mutua*, No. 12-CV-236-A, 2012 WL 4722688, at *8 (W.D.N.Y. Oct. 3, 2012) (finding that "[c]learing [the plaintiff's] personnel file of references to an unlawful termination" would be "directed toward preventing future violations of the plaintiff's federal civil rights" and was therefore prospective relief).

For these reasons, sovereign immunity does not bar Plaintiff's requests for declaratory and injunctive relief in Count Three or her requests for monetary damages in Count Four, except to the extent she seeks a declaration that Defendants violated federal law in the past.

### B. Personal Involvement of Defendant Bertolino

Next, the Court agrees with Defendants that the PSAC fails to allege Defendant Bertolino's personal involvement in any constitutional violation and, thus, Plaintiff's request to amend is futile to the extent she seeks monetary damages against him.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).  This is true with respect to supervisory officials, as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").  Thus, government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Here, Defendant Bertolino is mentioned only once in the PSAC, where Plaintiff alleges that Bertolino "is and was the President of SCSU during all times relevant herein" and "is being sued in his official capacity."  PSAC ¶ 15.  As a result, the PSAC is completely devoid of any allegations suggesting that Bertolino was personally involved in a violation of Plaintiff's right to procedural due process.  The Court therefore finds that Plaintiff's proposed amendments would be futile to the extent she seeks monetary damages from Defendant Bertolino.[14]

C.  Alleged Violations of Section 504 and the ADA

Plaintiff's proposed amendments are likewise futile to the extent Counts Three and Four allege violations of Section 504 and the ADA.  *See* PSAC ¶ 155 (alleging in Count Three that Defendants are "engaged in ongoing violations of Section 504 of the Rehabilitation Act and the

---

[14] Because "personal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983," *Young America's Found. v. Stenger*, No. 3:20-CV-0822 (LEK/ML), 2021 WL 3738005, at *8 n.2 (N.D.N.Y. Aug. 24, 2021) (brackets omitted), Plaintiff's failure to plead Defendant Bertolino's personal involvement in an alleged constitutional violation does not affect the validity of her claims seeking declaratory or injunctive relief against Bertolino in his official capacity.

[ADA]").  Section 1983 is not a proper vehicle for alleging violations of the ADA or the Rehabilitation Act.  *See Marino*, 18 F. Supp. 3d at 336 n.9 ("While '§ 1983 provides a cause of action for violations of federal statutes as well as the Constitution,' the ADA and Rehabilitation Act create enforceable rights indicating that Congress did not intend 'that plaintiffs would seek redress for violations of their ADA and Rehabilitation Act rights through the vehicle of § 1983.'" (brackets omitted)); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 333 (E.D.N.Y. 2012) (collecting cases and finding that "a plaintiff cannot assert claims under Section 1983 for the deprivation of rights guaranteed by the . . . ADA or the Rehabilitation Act").  Accordingly, to the extent Plaintiff attempts to allege violations of Section 504 and the ADA in Counts Three and Four, both of which she has brought pursuant to section 1983, her amendments would be futile.

D.  <u>Whether Plaintiff Has Otherwise Alleged a Violation of Her Right to Procedural Due Process</u>

To this point, the Court has found that Plaintiff's proposed claims in Counts Three and Four would be futile to the extent she seeks a declaration that Defendants violated federal law in the past, to the extent she seeks monetary damages against Defendant Bertolino, and to the extent she uses her section 1983 claims to assert violations of Section 504 and the ADA.  Accordingly, the Court turns next to whether Counts Three and Four would withstand a motion to dismiss to the extent Plaintiff otherwise seeks declaratory and injunctive relief from all four Individual Defendants and monetary damages from Defendants Hegedus, Prezant, and Faraclas.

As the Court discussed in its dismissal ruling, procedural due process claims "concern the adequacy of the procedures provided by [a] governmental body for the protection of liberty or property rights of an individual." *Gordon v. Nicoletti*, 84 F. Supp. 2d 304, 308 (D. Conn. 2000).  A plaintiff states a procedural due process claim under the Fourteenth Amendment by plausibly alleging that "(1) state action (2) deprived him or her of liberty or property (3) without due process

of law." *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021).  For the reasons below, the Court finds that Counts Three and Four plausibly state procedural due process claims.

At the outset, the PSAC plausibly alleges that Plaintiff's dismissal from the Program implicated a protected liberty interest.  In her amended complaint, Plaintiff did not plead allegations regarding such a liberty interest.  *See* Am. Compl. ¶ 108 (alleging that Plaintiff "had a property interest in her education").  By contrast, the PSAC alleges that Defendants "deprived [Plaintiff] of her liberty and/or property interests by excluding her from the entire educational process of the College of Education without due process of law."  PSAC ¶ 145.  The PSAC further alleges that Plaintiff's "expulsion and record of discipline" is "causing irreparable and ongoing harm by preventing Plaintiff's admission to an equivalent program."  *Id.* ¶ 120.  For their part, Defendants do not dispute that Plaintiff's alleged expulsion from the College of Education implicated a liberty interest.  Instead, they characterize the law on the issue as "unsettled."  ECF No. 44 at 27.

The Supreme Court has held that the Due Process Clause "forbids arbitrary deprivations of liberty" and that, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied."  *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  The Supreme Court reasoned, in the education context, that "[i]f sustained and recorded," charges of misconduct against students "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."  *Id.*  The Second Circuit and courts within this Circuit have held that, at least when expulsion from college is for disciplinary reasons, a liberty interest is at stake.  *Albert v. Carovano*, 824 F.2d 1333, 1339 n.6 (2d Cir. 1987) ("Although the students' complaint does not specify which rights they claim to have

been deprived of, we note that, at a minimum, the students' protected liberty interest is at stake because of the 'stigma' attached to suspension from college for disciplinary reasons."), *modified on reh'g*, 839 F.2d 871 (2d Cir. 1987), *on reh'g en banc*, 851 F.2d 561 (2d Cir. 1988); *Donohue v. Baker*, 976 F. Supp. 136, 145 (N.D.N.Y. 1997) ("It is well settled that an expulsion from college is a stigmatizing event which implicates a student's protected liberty interest."); *see also Danso v. Univ. of Conn.*, 919 A.2d 1100, 1106 (Conn. Super. Ct. 2007) ("Undoubtedly, . . . a student attending a state college has a liberty interest in continuing that education.").

Here, though the parties dispute whether Plaintiff's dismissal was disciplinary or academic, the PSAC specifically alleges that Plaintiff's expulsion is preventing her from being admitted to another program to pursue her education.  PSAC ¶ 120.  Moreover, as noted, Defendants do not dispute that Plaintiff may have had a liberty interest in her continued enrollment in the College of Education.  Accordingly, in light of Defendants' apparent concession, as well as binding case law indicating that a stigmatizing expulsion may implicate a liberty interest, the Court declines to find that Counts Three and Four would be futile because they fail to plausibly allege an interest protected by the Due Process Clause of the Fourteenth Amendment.

Next, the PSAC plausibly alleges that the process the Individual Defendants provided Plaintiff prior to her removal from the Program was constitutionally inadequate.  In the university setting, the type of process required varies depending on whether an adverse decision was made for disciplinary or academic reasons.  While a student is entitled to some form of hearing before being suspended or expelled for disciplinary reasons, *see Horowitz*, 435 U.S. at 90, the Supreme Court "has been clear that there is no mandatory set of formal procedures required for challenging academic decisions," *Marino*, 18 F. Supp. 3d at 337 (citing *Horowitz*, 435 U.S. at 89–90). Accordingly, "[w]hen judges are asked to review the substance of a genuinely academic decision,

. . . they should show great respect for the faculty's professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).  "The deference given to academic institutions is amplified at the highest levels of education as the 'instruction becomes both more individualized and more specialized.'"  *Marino*, 18 F. Supp. 3d at 337–38 (citing *Horowitz*, 435 U.S. at 90).  By contrast, when a student is expelled or suspended for disciplinary reasons, "due process requires . . . 'that the student be given oral or written notice of the charges against [her] and, if [she] denies them, an explanation of the evidence the authorities have and an opportunity to present [her] side of the story.'"  *See Horowitz*, 435 U.S. at 85.

As a preliminary matter, Plaintiff's PSAC relies heavily on Defendants' purported violations of university policies for her assertion that the process she was provided was inadequate. *See* PSAC ¶ 98 ("Plaintiff was denied due process because Defendants circumvented SSAP Procedures.");  *id.* ¶ 151(a) (alleging that Defendants failed "to provide progressive verbal and written feedback, as required under SCSU policies, *before* removing Plaintiff from her student teaching placement to provide an opportunity for improvement");  *id.* ¶ 151(*l*) (alleging that Defendants failed "to provide written notices and written decisions as required by SCSU policies");  *id.* ¶ 151(g) (alleging that Defendants failed "to provide Plaintiff notice and an opportunity to be heard, despite their obligation to do so under Policies and Procedures to which they were bound").  As the Court stated in its dismissal ruling, regardless of whether Plaintiff's dismissal was disciplinary or academic, alleged violations of university policies do not necessarily amount to *constitutional* violations cognizable under section 1983.  ECF No. 33 at 20.  Thus, the PSAC's allegations that Defendants violated university policies, without more, are insufficient to plausibly allege that the process Plaintiff received was constitutionally inadequate.

In her PSAC, however, Plaintiff now alleges that the Individual Defendants violated her right to procedural due process by "[f]ailing to provide an explanation of the evidence SCSU obtained . . . until after the Defendants made the decision to expel Plaintiff from the program, and even then failing to provide any details related to the evidence."  PSAC ¶ 151(c).  When a student is expelled for disciplinary reasons, due process requires that the student be given "an explanation of the evidence the authorities have" if she denies the allegations against her.  *Horowitz*, 435 U.S. at 85.  Thus, at least insofar as Plaintiff's dismissal was disciplinary, she has plausibly alleged that she was not provided with constitutionally adequate process.

As noted, the parties dispute whether Plaintiff's dismissal is properly characterized as disciplinary or academic.  The PSAC alleges that Plaintiff's dismissal was disciplinary because "the issue giving rise to the discipline involved Plaintiff's efforts to comply with the IDEA, and to assert her own rights as a student with a disability, which by their nature cannot be a violation of academic standards set forth by SCSU and the [Connecticut State Board of Education]."  PSAC ¶ 149.  The PSAC also alleges that Defendants "proceeded to discipline Plaintiff under policies for violations of academic standards, even though she had satisfied all academic requirements," *id.* ¶ 148, and that Defendants' acts were "intentional and inspired by ongoing retaliatory motives," as well as "actual malice and/or deliberate indifference to Plaintiff's constitutional rights," *id.* ¶ 156.  For their part, Defendants argue that the expulsion was purely academic because it involved concerns related to Plaintiff's "professionalism and academic status," rather than any purported "violation by [Plaintiff] of valid rules of conduct."  ECF No. 44 at 27–29 (citing, in part, *Horowitz*, 435 U.S. at 86–90).

Notwithstanding the parties' dispute, the PSAC's allegations that Defendants were motivated by malice when dismissing Plaintiff from the Program preclude a finding of futility.

The Second Circuit has held that, "[t]hough ordinarily the courts may not second-guess an educational institution's academic judgments, a Rule 12(b)(6) dismissal of a student's [due process] claim is improper where the contention is that the institution's action was 'motivated by bad faith or ill will unrelated to academic performance.'" *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (internal citations omitted). Here, Plaintiff has specifically alleged that her dismissal was motivated not by academic considerations, but rather by malice and discriminatory and retaliatory animus. PSAC ¶ 156; *see id.* ¶ 60 (alleging that Defendant Hegedus "raised concerns that Plaintiff could not be successful specifically because of symptoms of her anxiety"). Thus, notwithstanding Defendants' arguments that Plaintiff's dismissal was solely an academic decision, a finding that Plaintiff's PSAC could not withstand a motion to dismiss would be improper in light of Plaintiff's non-conclusory allegations that "bad faith or ill will," and not academic considerations, precipitated her expulsion.

For these reasons, the Court declines to find that Counts Three and Four of the PSAC would be futile because Plaintiff has failed to plausibly allege the elements of a procedural due process claim.

### E. Qualified Immunity

The Court next declines to find that Plaintiff's remaining claims for damages against Defendants Hegedus, Faraclas, and Prezant in their individual capacities are futile because these Defendants are entitled to qualified immunity.[15]

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[15] The doctrine of qualified immunity is not relevant to Plaintiff's claims against the Individual Defendants in their official capacities because qualified immunity "does not bar actions for declaratory or injunctive relief," *Sudler v. City of New York*, 689 F.3d 159, 177 (2d Cir. 2012).

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   In other words, qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).   "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amorev v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

Qualified immunity may be asserted on a motion to dismiss because the doctrine "provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson*, 555 U.S. at 231).   A defendant asserting a qualified immunity defense on a motion to dismiss, however, must overcome a "formidable hurdle," *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004), as "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense," *id.* at 436.   A defense of qualified immunity will support a motion to dismiss, therefore, only if the plaintiff cannot state any facts that would prevent application of qualified immunity.  *Id.*

In considering whether a state official is protected by qualified immunity, the Court must determine:  (1) whether the plaintiff has shown facts making out a violation of a constitutional right; and (2) if so, whether that right was "clearly established." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).   Official conduct violates clearly established law "when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Id.* at 741 (internal punctuation and quotation marks omitted).

Here, with respect to the first prong of qualified immunity, the Court has already determined that Plaintiff has plausibly alleged a constitutional violation. As for the second prong, this is not a case in which the Court can find at the pleading stage that Defendants Hegedus, Faraclas, and Prezant are entitled to qualified immunity. The Supreme Court expressly held in 1978 that "due process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given . . . an explanation of the evidence the authorities have'" if she denies the charges against her. *Horowitz*, 435 U.S. at 85 (quoting *Goss*, 419 U.S. at 581). Based on the allegations in the PSAC, it is not clear that Defendants Hegedus, Faraclas, and Prezant reasonably could have believed that they were complying with this requirement or that they were not required to comply with this requirement in light of the nature of Plaintiff's expulsion. *See Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam) ("A defendant presenting an immunity defense on a motion to dismiss must . . . show not only that 'the facts supporting the defense appear on the face of the complaint,' but also that 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"). Put differently, it is possible that the legal principle expressed in *Horowitz* "clearly prohibit[ed]" the conduct of Defendants Hegedus, Faraclas, and Prezant "in the particular circumstances before [them]." *See District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 590 (2018).

Accordingly, the Court declines to find Plaintiff's claims for money damages against Defendants Hegedus, Faraclas, and Prezant futile on qualified immunity grounds.

F.   <u>Individual Defendants' Authority to Provide the Relief Plaintiff Requests</u>

Finally, the Court rejects Defendants' assertion that Counts Three and Four would be futile because Plaintiff has failed to allege that any of the Individual Defendants have the authority to provide the injunctive relief she requests.  At the outset, although Defendants assert that *all* claims against the Individual Defendants must be dismissed on this ground, ECF No. 44 at 37, they fail to explain how this reasoning could possibly apply to Plaintiff's claims for monetary damages. Moreover, Plaintiff has alleged that the Individual Defendants continue to hold positions of authority at SCSU as President, Dean of the College of Education, Chair of the Department of Special Education, and Provost and Vice President for Academic Affairs.  PSAC ¶¶ 15–18.  As discussed, Plaintiff seeks injunctive relief in the form of orders directing the Individual Defendants to reinstate her to the Program, cease their discriminatory practices, and expunge references to discipline from Plaintiff's record.  The Court declines to find that Plaintiff's proposed claims are futile on the ground that the Individual Defendants—each of whom is alleged to hold a position of considerable authority within SCSU and/or the College of Education—could not provide the relief she requests.

G.   <u>In Sum</u>

For these reasons, Plaintiff's request to amend to assert Counts Three and Four of her PSAC is DENIED IN PART, to the extent she seeks a declaration that Defendants violated her rights in the past, to the extent she seeks monetary damages against Defendant Bertolino, and to the extent she attempts to use her section 1983 claims as a vehicle for asserting violations of Section 504 and the ADA.  Plaintiff's request to amend to assert Counts Three and Four is GRANTED IN PART, to the extent she otherwise seeks injunctive and declaratory relief from the

Individual Defendants in their official capacities and monetary relief from the Individual Defendants in their individual capacities.

## V. CONCLUSION

For the reasons described herein, Plaintiff's motion for leave to amend is GRANTED IN PART and DENIED IN PART.

By **August 4, 2023**, Plaintiff shall submit, as her second amended complaint, a revised version of ECF No. 38-3 that is consistent with this ruling.  Plaintiff's second amended complaint should omit the following allegations:  (1) references in Counts One and Two to Plaintiff's failure to accommodate and retaliation theories; (2) references in Counts Three and Four to violations of Section 504 and the ADA; and (3) any requests for declarations that Defendants violated federal law in the past.  The second amended complaint should also clarify that Count Four is asserted against Defendants Hegedus, Faraclas, and Prezant only.

The stay of discovery set in ECF No. 30 is hereby lifted.  By **August 11, 2023**, the parties shall file a Rule 26(f) report to propose a schedule for this case.

        **SO ORDERED** at Hartford, Connecticut, this 28th day of July, 2023.


                _/s/ Sarala V. Nagala_____
                SARALA V. NAGALA
                UNITED STATES DISTRICT JUDGE